HEMAN, Appellant, v. HARTMAN et al.

### Division One, May 24, 1905.

1. **VOLUMINOUS INSTRUCTIONS.** Where the instructions given are entirely too voluminous, and for that reason the court would have been justified in refusing the entire volume, and either writing an instruction itself covering the entire case or requiring counsel to do so, the judgment for defendant will not be set aside if the plaintiff was the chief offender in that regard.

2. ———: **Unnecessary Instructions.** The plaintiff cannot shut out defendant's right to have instructions presenting his side of the case, by presenting voluminous instructions covering the entire case, and then when defendant's are offered complain that they were unnecessary, and, when taken in connection with plaintiff's, made the instructions too voluminous.

3. ———: **Verdict for Right Party.** Where the verdict is clearly for the right party the judgment will not be reversed on the ground that the instructions given were too numerous and voluminous.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz*, Judge.

AFFIRMED.

*Hickman P. Rodgers* for appellant.

(1) Instructions of unnecessary volume and multiplicity tend to confuse the jury and make their verdict guesswork; and it is reversible error to give same. Sidway v. Land & Live Stock Co., 163 Mo. 342. (2) Instructions giving undue prominence to legal principles applicable to one side of the case tend to mislead the jury. They are prejudicial and harmful and it is error to give them. Powell v. Messer, 18 Tex. 401.

*T. J. Rowe* for respondents.

The law is properly declared in each of the instructions given at the instance and request of defendants. No error can be found in any one of the ten instructions given at their request, and appellant in his brief concedes their correctness. But appellant says twelve pages of instructions tended to confuse the jury, and that on the authority of Sidway v. Land & Live Stock Co., 163 Mo. 342, the judgment in this case should be reversed, because the court gave eight pages of instructions at the instance and request of plaintiff, and only four pages at the instance and request of defendants. Such a proposition finds no support in law or logic. There is no resemblance between that case and the one here before this court. If it was error to give twelve printed pages of instructions, plaintiff was responsible for the error. If it was error to give eight pages of instructions at the instance of plaintiff and four pages at the instance of defendant, it was not prejudicial. "To justify the reversal of a judgment on error, the record must affirmatively show, not only that error intervened, but that it was to the prejudice of the party seeking to take advantage of it." Scovern v. State, 6 Ohio St. 288; Harter v. Eltzroth, 111 Ind. 159; Walter v. Hoeffner, 51 Mo. App. 52. Unless errors materially affect the merits of the action and are actually prejudicial to the substantial rights of the complaining party, they will not work a reversal of the judgment. Bellissime v. McCoy, 1 Mo. 318; Mitchell v. Bradstreet Co., 116 Mo. 226; Jordan v. Eans, 97 Mo. 587; Valle v. Picton, 91 Mo. 207; Railroad v. Holladay, 131 Mo. 440; Com. Co. v. Block, 130 Mo. 668; Brandon v. Carter, 119 Mo. 572.

VALLIANT, J.—A will contest. Frederick Heman died January 15, 1902, leaving a paper which was on January 21, 1902, duly admitted to probate as his

will, in the probate court of the city of St. Louis. The testator left six children, five sons and one daughter. The sons were men of mature age, three of them engaged in profitable business and had accumulated a considerable fortune; the daughter was the youngest of the family, a married woman with two children. The testator left an estate worth about $175,000. The will in contest makes an unequal division of the property, giving to each of the three elder sons, of whom is the plaintiff, property valued at $1,116.66; to the fourth son, $29,133.97, and to the fifth son, $32,633.97, while to the daughter is given property valued at $100,294.97. There was also a legacy to the testator's brother valued at $3,000, one to his sister of $2,000, and several to charitable purposes, aggregating $6,000. At the time of his death the testator was 72 years and six months old, his wife had died about ten years before, and after her death he requested his daughter to come with her family and live with him at his home, and they did so and thus continued to the date of his death.

The contest of the will is on two grounds, first, that the testator was not of sound mind; second, that the will was the result of undue influence exerted by the daughter and her husband over the testator.

On the part of the defendants, the proponents of the will, the testimony tended to show that Mr. Heman, the testator, called at the office of his son-in-law, Hartman, and told him that he wished to make his will, and that Dr. Thomas O'Reilly had advised him to get Mr. Vierling, trust officer in the Mississippi Valley Trust Company, to write it for him, and requested him, Hartman, to go with him to the Trust Company and introduce him to Mr. Vierling; Hartman did as requested and left the testator as soon as he had introduced him; when they were alone Mr. Heman told Mr. Vierling how he wanted to dispose of his estate, Vierling made notes of what was desired and appointed an hour that afternoon for Mr. Heman to call or send for the will,

which he said would be prepared by that time.    Mr. Heman again went to Hartman's office and requested him to call and get the will and bring it to him in the grand stand of the Gentlemen's Driving Club in Forest Park, where he would be that afternoon.    Hartman did as requested, delivered    the paper he had received from Vierling to Mr. Heman, and the latter afterwards went alone to the office of Dr. Thomas O'Reilly where he executed the will, Dr. Thomas O'Reilly and his brother Dr. Richard O'Reilly signing it as witnesses. Dr. Thomas O'Reilly had been the testator's personal physician for many years.    After the will was executed it was delivered to the Mississippi Valley Trust Company, who retained it until after the death of the testator, something over two years, when it was presented to the probate court; that the testator was of sound mind when he executed the will.

In view of the single assignment of error by appellant it is unnecessary to set out even an epitome of the evidence on the part of the contestant.    There was no evidence at all to sustain the charge of undue influence, and if it should be conceded that there was some evidence to sustain the charge that the testator was of unsound mind it is as much as the most favorable interpretation of the evidence in contestant's behalf will warrant.    The testimony in rebuttal to the contrary is so clear and convincing that the trial court would never have allowed a verdict against the will on that ground to stand.

The cause was submitted to the jury under instructions that directed a verdict for the contestant, that is, that the paper writing was not the will of Frederick Heman deceased, if the jury should find that at the time he signed it he was not of sound mind or that he did so under pressure of undue influence; but that if, at the time, he was of sound mind and there was no undue influence, the jury should find that it was the will of the Frederick Heman deceased.    There were elaborate in-

structions given defining what was meant by sound mind and unsound mind, and mental capacity required to make a will; and also defining undue influence and how to apply that term to the case. The jury returned a verdict sustaining the will, there was a judgment accordingly, and the contestant appeals.

There is but one assignment of error, which is: "The trial court in giving, at the instance of defendants, instructions containing numerous repetitions and giving undue prominence to defendants' side of the case; and in the multiplicity and unnecessary length of instructions given."

In appellant's brief it is said that the instructions given "were of such length as to cover practically twelve pages of the printed record compactly set up with about the same type as that used in the Missouri Reports. Of instructions given, the eleven asked by plaintiff are such as to fully define the issues of the case, and they directed the jury to find for the plaintiff or defendants according to the jury's finding of the facts. Plaintiff's instructions were designed to fairly treat every feature of the entire case, and were, with few possible exceptions, as favorable to one side as to the other. Notwithstanding this, the court gave, at defendants' request, eight instructions of great length, nearly, if not all, of which were unnecessary."

The instructions were entirely too voluminous, and the court would have been justified in refusing the entire volume on that ground and either writing an instruction itself covering the case or requiring counsel to do so, bringing it within reasonable bounds. We agree with the learned counsel for appellant that such a multitude of instructions, unnecessarily voluminous, tend to confuse rather than enlighten the jury, defeating the very purpose for which instructions are intended.

The instructions in this case went, in volume, even beyond that of the instructions in Sidway v. Mo. Land

Heman v. Hartman.

& Live Stock Co., 163 Mo. 342, where it was held that the multiplicity of the instructions was itself sufficient to warrant a reversal of the judgment. All the law bearing on this case, necessary for the guidance of the jury, could have been expressed with sufficient elaboration in one-fifth of the volume given, and if so expressed would have been more easy of comprehension by the jury than in the greater volume.

But appellant has no right to complain of this, because he is himself the chief offender in the practice which he condemns. Of the twelve long, compactly set, printed pages covered by these instructions, eight are occupied by instructions given at the request of appellant. The learned counsel insist that the plaintiff's instructions covered the whole case, directed the jury as to what facts they should find in order to sustain the will, and what to break it, and that the instructions given for defendants were but repetitions of the law already given on their side at the request of plaintiff. But the plaintiff could not, by undertaking to cover both sides, shut out the defendants from the management of their side of the case. It is not suggested that the instructions given for defendants are erroneous in the law they declare, but only that they were unnecessary, and when added to those given at the request of the plaintiff, made the volume entirely too large for digestion by the jury. Under the circumstances of this case we do not feel justified in reversing the judgment on that ground.

Besides, the verdict is so clearly for the right party that we would not be justified in reversing the judgment any way.

The judgment is affirmed. All concur.