LEE A. WOLFE v. JOHN BARTON PAYNE, Director General of Railroads, Appellant.

*In Banc, June 1, 1922.*

1. **SAFETY APPLIANCE ACT:** Coupling and Uncoupling Cars: Application to Other Employment. The Safety Appliance Act of Congress (Sec. 8608, Comp. Stat. U. S. 1918) declaring that "it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab-irons or hand-holds in the ends and sides of each car for greater security to men in coupling and uncoupling cars" is not restricted in its application to employees while engaged in coupling and uncoupling cars, but extends to all employees injured while using said defective appliances in the discharge of their duties. It applies to the cause of action of a conductor of a freight train who, riding in the stirrup or sill-step of a car and holding with one hand to the grab-iron bolted into rotten wood and therefore loose, but not engaged in coupling or uncoupling cars, signaled the fireman to stop, and when the train moved forward with a jerk and accelerated speed was caused to fall and was injured.

2. ———: Necessary Proof: Carrier's Imperative Duty: Negligence. Where plaintiff's case comes under the Safety Appliance Act re-

Wolfe v. Payne.

quiring a railroad company to "secure grab-irons or hand-holds in the ends and sides of each car," it is sufficient, to establish his right to recover damages for his injuries, to prove the existence of the defective grab-iron and that it was in part the cause of his injury. It was the imperative and absolute duty of the railroad company to maintain the grab-iron in a secure condition, and it is not necessary for plantiff to prove that the company negligently failed to so maintain it.

3. ———: Contributory Negligence: Reduction of Damages. Contributory negligence is no defense to a cause of action arising under the Safety Appliance Act of Congress, nor will it avail to reduce the damages an injured employee may recover. The Employers' Liability Act expressly declares that no employee injured or killed "shall be held to have been guilty of contributory negligence in any case where the violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee," and this statute abolishes the defense of contributory negligence, not only as a bar to recovery, but for all purposes.

4. ———: Defective Grab-Iron: Instruction: Inclusion of Other Negligent Acts. It being undisputed that the car on which the conductor was riding was being used in interstate commerce and that the grab-iron to which he was holding with one hand was loose and defective, the only question relating to the carrier's liability for damages is whether the defective condition was a contributory cause of his injury; and although the instruction submits other acts of negligence, such as a sudden jerk of the car caused by the engineer's failure to obey the conductor's signal to stop and negligent failure to repair the grab-iron, yet if no recovery is authorized on account thereof unless the jury further believe from the evidence that the defective grab-iron contributed to his injury, and that issue is fairly embraced in the instruction, a verdict for plaintiff is authorized.

5. INSTRUCTION: Inclusion of Unnecessary Elements. An instruction for plaintiff which requires the jury to find certain acts of negligence which are not necessary elements of plaintiff's cause of action, is not erroneous, but the inclusion of them in the instruction will be regarded as surplusage. Nor will the judgment be reversed because there was no sufficient proof of such unnecessary elements.

6. ———: Unnecessary Length: Inclusion of Surplus Elements. The mere length of an instruction, though objectionable, does not constitute reversible error; and particularly so, where its length

is attributable to the assumption by plaintiff of the burden of establishing acts of negligence which were not necessary to his right to recover, and are therefore matters of which defendant has no right to complain, because in its favor.·

*Held*, by GRAVES, J., dissenting, with whom DAVID·E. BLAIR, J., concurs, that an instruction covering four printed pages shocks the experience of bench and bar, and no average jury could carry the thought it is supposed to express, and it being the only instruction given for plaintiff a verdict based thereon should not be permitted to stand.

7. **EXCESSIVE VERDICT:** Contributory Negligence: Loss of Arm. A verdict in this case for $15,000, where plaintiff's injuries made necessary the amputation of his left arm at the shoulder, cannot be·held to be excessive because the instruction did not require the damages to be reduced in proportion to plaintiff's contributory negligence, since contributory negligence is no defense and cannot be considered for any purpose in an action based on the violation of the Safety Appliance Act of Congress; but nevertheless said verdict is excessive, and plaintiff is accordngly required to file a *remittitur* of $2500 as a condition of affirmance.

Appeal from St. Louis City Circuit Court.—*Hon. Benjamin J. Klene*, Judge.

AFFIRMED (*upon condition*).

*Jones, Hocker, Sullivan & Angert* for appellant.

(1)  The failure of the fireman to cause to be obeyed the stop signal alleged to have been given by the plaintiff was not the juridical cause of his injury.  Walsh v. Railway Co., 102 Mo. 587; Harper v. Terminal Co., 187 Mo. 586; Kane v. Railroad, 251 Mo. 26.  (2)  There was no evidence to go to the jury of a negligent jerk of the train.  Hedrick v. Railroad Co., 195 Mo. 120.  (3) The grab-iron being required by law and provided for use in coupling and uncoupling cars, the defendant owed the plaintiff no duty with respect thereto. Federal Safety Appliance Act, sec. 3; U. S. Comp. St. 1918, sec. 8608; St. Louis Ry. Co. v. Conarty, 238 U. S. 248; Rutledge v. Ry. Co., 110 Mo. 312; York v. Railway, 117 Mo. 411; Hogan v. Ry. Co., 209 N. Y. 20; Kier-

nan v. Mfg. Co., 134 N. Y. (App. Div.) 192; Labbatt
on Master & Servant, sec. 921.    (4)  The defect in the
grab-iron was so inconsequential as that it was not neg-
ligence to fail to anticipate injury from it.   Hill v. Rail-
way Co., 47 L. R. A. (N. S.) 1144 and note.   (5)   The
defendant had not had possession of the car sufficiently
long to charge him with notice of the condition of the
grab-iron.   Gordon v. Railroad Co., 222 Mo. 527.   (6)
The verdict of a jury cannot overturn physical facts.
Champagne v. Hainey, 189 Mo. 726; Roberts v. Railway,
56 Mo. App. 64;  Spiro v. Transit Co., 102 Mo. App.
263.   (7)   It is error to give an instruction so lengthy
and verbose as to confuse instead of enlighten the jury.
Williams v. Ransom, 234 Mo. 66;  Stid v. Railroad, 236
Mo. 398;  Crowl v. Am. Linseed Co., 255 Mo. 331;  An-
drew v. Linebaugh, 260 Mo. 651;  Heman v. Hartman,
189 Mo. 241;  Sidway v. Live Stock Co., 163 Mo. 376.
(8)   It is error to invite a jury to find a fact of which
there is no evidence.   Modlagi v. Foundry Co., 248 Mo.
601.   (9)   Under the decisions of this court in kindred
cases the verdict of fifteen thousand dollars is full com-
pensation for plaintiff's hurts, if there was no contribu-
tory negligence on his part.   Greenwell v. Ry. Co., 224
S. W. 404;  Nealy v. Railroad Co., 229 S. W. 219;  Neff
v. Cameron, 213 Mo. 366.   (10)   The plaintiff having a
choice of three ways to ride, and choosing the more dan-
gerous, was guilty of contributory negligence as a mat-
ter of law.    Moore v. Ry. Co., 146 Mo. 582;  Hurst v.
Ry. Co., 163 Mo. 322;  Hirsch v. Bread Co., 150 Mo. App.
174.   (11)   The full compensation allowed by the jury
for his hurts should be reduced here by his own un-
doubted contributory negligence.   Act of Congress, April
22, 1908, Sec. 3, U. S. Comp. St. sec. 8659, i. e., Federal
Employers' Liability Act, sec. 3.

   *Sidney Thorne Able* and *Charles P. Noell* for re-
spondent.

   (1)   Under the express provisions of the Federal
Employer's Liability Act, if the negligence (violation of

a signal) of an employee in whole or in part causes injury to another employee a right of recovery by the injured employee exists. Waters v. Guile, 234 Fed. 532. (2) Plaintiff assumed an unnecessary burden in his instruction in requiring the jury to find this additional ground of negligence before entitling him to recover. Callicotte v. Ry. Co., 204 S. W. 529, 274 Mo. 689. (3) While the train was being slowed up ''as if to stop'' upon a stop signal being given at the time by the plaintiff, it was negligence, within the meaning of the Federal Employer's Liability Act entitling plaintiff to recover, for the fireman and engineer in violation of such signal to cause the train to suddenly start forward at an increased rate of speed, jerking the slack out of the train, when such negligent action concurs with a movement in a loose grab-iron, causing the plaintiff to fall from the train and be injured, for such injury resulted ''in part'' (within the meaning of such terms as used in the act) from the violation of such signal. Acts of Congress, U. S. Comp. Stat. 1918, sec. 8657; Waters v. Guile, 234 Fed. 532. This was not submitted to the jury as an independent ground of negligence entitling the plaintiff to recover by any instructions other than those of the defendant. Appellant admits that the grab-iron was required by the Safety Appliance Act to be secure and that it was not secure and that such insecure grab-iron contributed to plaintiff's fall and injuries; then where plaintiff's petition states a cause of action under the Safety Appliance Act the respondent in the trial court assumed an unnecessary burden in requiring that additional negligence be also found before entitling the plaintiff to recover. Callicotte v. Ry. Co., 204 S. W. 529, 274 Mo. 689. (4) Grab-irons were in use on freight cars before a safety appliance act was ever thought of, and the mere fact that such act requires those that are on the sides and ends of such cars and which are or can be used in coupling cars to be secure, or if there are none that can be used for such purpose to install secure ones for such purpose, making it negligence *per se* to fail to

do so, in no way inhibits the use of such appliance for any other use in the operation of trains. That the plaintiff was making no unusual use of such appliance is shown by the testimony. There is no evidence in the case, nor could there be any obtained, that the trainmen were instructed not to get upon the stirrup and hold on to the grab-iron above it at either end of the car for the purpose of giving signals for the movement of the train. That such appliances are used for other purposes is illustrated in these cases: Boehmer v. Penn. Railroad, 252 Fed. 554, 252 U. S. 496, 40 Sup. Ct. Rep. 409; United States v. B. & M. Railroad Co., 168 Fed. 148. (5) An employee engaged about duties other than the ones which the Safety Appliance Act specifically mentions is entitled to the advantages which the Safety Appliance Act add to those of the Employer's Liability Act where the defective appliance contributes to cause his injuries. Gotschall v. Railways, 244 U. S. 66, 37 Sup. Ct. Rep. 598, 61 L. Ed. 995; Director General of Railroads v. Ronald, 265 Fed. 138; Reap v. Hines, 273 Fed. 92; L. & N. Railroad v. Layton, 243 U. S. 617, 37 Sup. Ct. Rep. 456; Tyon v. Wabash Ry. Co., 232 S. W. 786; C., B. & Q. Ry. Co. v. United States, 220 U. S. 558, 55 L. Ed. 582; Grand Trunk Ry. v. Lindsay, 233 U. S. 42, 58 L. Ed. 838; Great Northern Ry. Co. v. Otos, 239 U. S. 349, 36 Sup. Ct. Rep. 124. (a) The plaintiff therefore assumed in the court below an unnecessary burden not binding upon him on appeal, as he is not the appellant or complaining party. Callicotte v. Ry., 204 S. W. 529, 274 Mo. 689; Moore v. Ry. Co., 268 Mo. 31. (b) This, therefore, makes it unnecessary for the court to examine many points of the briefs of appellant. (6) A grab-iron which was so loose that it could slide in and out of the car for an inch and a half, and had a movement up and down, cannot be said, as a matter of law, to be so inconsequential that it was not negligence under the Federal Employers' Liability Act to leave it in such condition, on the ground that defendant could not anticipate injury from it. (7) The

grab-iron being insecure was a violation of the Safety Appliance Act, and therefore the question of negligence does not arise. Miller v. Ry. Co., 169 Fed. 567; Gates v. Crane Co., 204 S. W. 38; Carpenter v. Railroad, 189 Mo. App. 169; Davis v. Ry., 151 Fed. 1009, 172 Fed. 961; Yazoo Railroad Co. v. Long, 201 Fed. 881; Carroll v. Fertilizer Co., 204 S. W. 1133. (8) If the plaintiff asks a long instruction correct in substance and the trial court refuses it and gives a shorter one which fairly covers the plaintiff's case, there is no wrong done the plaintiff, and an appellate court, of course, would hold that he was not entitled to a new trial. Williams v. Ransom, 234 Mo. 71. A long instruction of respondent which, in part, is erroneous, to the detriment of appellant, and which conflicted with a proper instruction of the appellant, would, of course, warrant a reversal. Stid v. Railroad, 236 Mo. 399. No appellate court has ever remanded a case on account of the length of an instruction unless the instruction was shown to be erroneous in substance, to the detriment of the appellant. Appellant must "point out wherein the instruction was too long and wherein it was calculated to mislead and confuse the jury," to the detriment of defendant. Crowl v. Am. Linseed Co., 255 Mo. 305, 331; R. S. 1919, secs. 1276, 1513; Andrew v. Linebaugh, 260 Mo. 651; Sidway v. Land & Live Stock Co., 163 Mo. 386; Bryant v. Rys. Co., 217 S. W. 634. "Appellant has no right to complain," where it secured the giving of nine instructions which take up six pages of the printed record, clearly covering appellant's contentions why the plaintiff should not recover, because the plaintiff joined in one instruction the question of negligence and measure of damages, where such instruction correctly declared the law. Heman v. Hartman, 189 Mo. 25. (9) The "question of the proper measure of damages is inseparably connected with the right of action, and in cases arising under the Federal Employers' Liability Act it must be settled according to general principles of law as administered in

the Federal courts.'' C. & O. Ry. Co. v. Kelly, 241 U. S. 485, 36 Sup. Ct. Rep. 632. Under the decisions of the Federal courts, Erie v. Downs, 250 Fed. 415, appellant realized that the amount approved by the jury and trial court in this case was not excessive for the injury sustained. But appellant does contend that the amount received was the full amount under the evidence that could lawfully stand. This we deny.

SMALL, C.—Personal injury suit. Plaintiff's evidence tended to show that on March 14, 1918, he was a conductor on the Chicago & Eastern Illinois Railroad, then in control and being operated by the Government under the Federal Control Act, and lost his left arm by being run over by a car in the freight train of which he was conductor. That while the train was at Bourbon Station, Illinois, moving slowly, he was standing on the west side of a car, with his feet in the sill-step or stirrup close to the north end of the car, and his right hand holding on to the hand-hold or grab-iron. The said sill-step was fastened to the bottom of the car within a foot or thereabouts of the north end, and directly over it, about three or four feet, was the hand-hold or grab-iron, a round iron bar about twenty inches long, bent at the ends, which were bolted into the wooden side of the car. But the wood had rotted or been worn away, so that the bolts had a play or movement of about an inch or more, which made the grab-iron loose and defective, and permitted it to move to that extent. While thus holding on to the grab-iron with his right hand and standing in this step, plaintiff signaled the fireman, with his left hand to stop the train, but instead of stopping, the train moved forward with a violent jerk at accelerated speed, and by reason of the movement of the loose grab-iron to which plaintiff was holding, he was caused to fall to the ground beside the car, and one of the wheels ran over his left arm and injured it so that it had to be amputated at the shoulder joint. Plaintiff's evidence further tended to

294 Mo.—12

show that it was not unusual for conductors or brakemen to stand in the step and hold on to the grab-iron to signal orders as to the movement of the train.

The defendant's evidence tended to show a contrary state of facts, and that plaintiff was injured in attempting to exchange papers with the station agent while hanging and leaning out from the ladder on the side of the car near its south end, while the same was in motion in passing said station, and slipped and fell under the car in so doing.

The car was an interstate car and was being used in interstate commerce. As to this there was no dispute. Nor was there any dispute as to the worn condition of the wood around the hand-hold and the loose condition of the bolts therein, which permitted the grab-iron or hand-hold to have a movement or play of about an inch.

The petition, which is long, in substance, alleged as to the cause of the accident, first, that the grab-iron was defective and insufficient and not securely and safely attached to the side of the said car; that the grab-iron, the bolt and other apparatus used to attach the grab-iron to the car, and the car at the point of attachment were then and there old, worn, loose, unstable, wobbly and rickety and dangerous and unsafe to work about, and had been in that condition for some time before the accident, as defendant knew or might have known by due care, in time to remedy same prior to plaintiff's injury, but negligently failed to do so or warn plaintiff with reference to same, and that by reason of defendant's negligence and "the defects and insufficiencies" which were due to defendant's negligence, plaintiff was injured.

Second, that while plaintiff was so riding upon the side of the car and holding to said grab-iron and the train was moving slowly, plaintiff gave the usual signal to the persons in charge of the engine to stop, but they negligently failed to look out and discover said signal, or if they saw it, they negligently failed to obey it, but

negligently started said train forward without warning plaintiff, knowing, or by the exercise of due care might have known, that plaintiff was in a place of danger of being thrown off by such action, and thereby precipitated the plaintiff to the ground, whereby he was injured as before stated.

The third specification is in substance the same as the first, except it also alleged the car was being used in interstate commerce, and the grab-iron and attachments were not securely fastened as required by the Safety Appliance Act of the United States and the orders of the Interstate Commerce Commission, but old, worn, loose, dangerous and unsafe and in a condition in violation of the said Safety Appliance Act, etc., whereby plaintiff was thrown off and injured.

The fourth specification is substantially the same as the second, with the additional allegation that the train was started forward with a violent and extraordinary jerk at accelerated speed, and by reason of the movement of the loose grab-iron to which plaintiff was holding, he was caused to fall to the ground beside the car, and one of the wheels ran over his left arm and injured it so that it had to be amputated a few hours afterwards at the shoulder joint.

The petition then alleges that by reason of all ''the aforesaid mentioned matters, singly and collectively, he was thrown from the side of the car and beneath the wheels of one of the cars in said train and one of said wheels ran over plaintiff's arm,'' etc.

''Wherefore plaintiff states that he has been damaged in the sum of $65,000, for which, with costs, he prays judgment.''

The answer put the allegations of the petition in issue, also pleaded contributory negligence and assumption of risk. Reply was a general denial.

The court refused a demurrer to the evidence asked by defendant, gave nine instructions for defendant, four on its own motion, and one for the plaintiff. The plaintiff's instruction was as follows: .

"The court instructs the jury that if you find and believe from the evidence that the plaintiff was injured on or about the 14th day of March, 1918, in Bourbon, Illinois, and if you further find and believe from the evidence that at the time he was injured he was the conductor of Freight Train Number 160, and if you further find and believe from the evidence that at such time Freight Train Number 160 was moving northwardly on the north-bound main track of the Chicago & Eastern Illinois Railroad Company, and if you further find and believe from the evidence that there was a car initialed B. & L. E. and numbered 80993 in Train Number 160 at the time which contained corn shipped from Arthur, Illinois, and which was at the time *en route* to Terre Haute, Indiana (if you so find), and if you further find and believe from the evidence that the plaintiff, Lee A. Wolfe, was at the time riding on the side of the said car initialed B. & L. E. and numbered 80993, holding to a grab-iron on the west side near the north end of the aforesaid car in the aforementioned train, if you find that it was in said train, and if you further find and believe from the evidence that at the time the train was moving at a slow rate of speed, and if you further find and believe from the evidence that the plaintiff, Lee A. Wolfe, gave a stop signal in the performance of his duties as the conductor upon the train, if you so find, to those operating and in charge of the movement of the said engine, and if you further find and believe from the evidence that the fireman was in the cab of the engine on the west side of the train, and if you further find and believe from the evidence that the fireman was looking back toward the plaintiff, and if you further find and believe from the evidence that it was the duty of the fireman to exercise ordinary care to discover, transmit and pass a signal to the engineer, if a signal was given by the plaintiff, and if you further find and believe from the evidence that it was then the duty of the engineer to act upon such signal, if such signal was repeated to him

by the fireman, and if you further find and believe from the evidence that the fireman knew that the plaintiff was on the side of the said train and in a position where he would be in danger of being thrown off the train by the sudden increase of the speed of the said train without warning to the plaintiff that the speed was to be increased, and if you further find and believe from the evidence that in the exercise of ordinary care it was the duty of the fireman to exercise ordinary care to look out for signals given by the plaintiff, and if you further find and believe from the evidence that just prior to the time plaintiff was injured, if you find that he was injured, plaintiff gave a stop signal and if you find and believe from the evidence that the fireman either saw the stop signal given by the plaintiff or if he did not see it that had he exercised ordinary care he could have seen the stop signal, if you find that there was a stop signal given by the plaintiff at the time, and if you further find and believe from the evidence that while plaintiff was giving the stop signal the train slackened up to a slower speed, and if you further find and believe from the evidence that the plaintiff continued to give the stop signal, and if you further find and believe from the evidence that while the said stop signal was being given by the plaintiff those in the engine and in charge thereof gave the engine steam and caused the train to start suddenly forward at an increased rate of speed, if you so find, and if you further find and believe from the evidence that in the exercise of ordinary care those in charge of and operating the engine should not have caused the train to start forward, but should have brought the train to a stop, and if you further find and believe from the evidence that no warning was given to the plaintiff that the train was about to start forward at an increased rate of speed, and if you further find and believe from the evidence that such a movement at such a place under the conditions as they existed there at the time was unusual and unnecessary in the movement then

being made, and if you further find and believe from the evidence that the sudden starting forward of the train without any signal from the plaintiff so to do while the plaintiff was giving a stop signal (if you find and believe from the evidence that the train was suddenly started forward without any signal from the plaintiff and while the plaintiff was giving a stop signal) contributed to cause the plaintiff to fall from the side of said car and his left arm to be run over and cut off, if you find that the plaintiff did fall from the side of said car and his left arm was run over and cut off, and if you further find and believe from the evidence that at the time the plaintiff was exercising ordinary care for his own safety, and if you further find and believe from the evidence that at the time the grab-iron to which the plaintiff was holding, if you find that the plaintiff was holding to a grab-iron, was not securely fastened to the side of the car and that there was some play or movement in this grab-iron, and if you further find and believe from the evidence that the north end of the aforesaid grab-iron was attached to the car by means of a bolt which ran through the wooden part of the car out through the end of the grab-iron, and if you further find and believe from the evidence that the hole in the wooden part of the car through which this bolt passed had been enlarged by a wearing away of the portion of the wood around the hole, and if you further find and believe from the evidence that this permitted some play or movement in the north end of the grab-iron, and if you further find and believe from the evidence that this grab-iron had been in this condition for some time prior thereto, and if you further find and believe from the evidence that the grab-iron in this condition was dangerous and not reasonably safe for the use of the men working upon and about the said train, and if you further find and believe from the evidence that the defendant or its inspectors could by the exercise of ordinary care have discovered the condition of this grab-iron, if you find that the grab-

iron was in this condition, in time by the exercise of
ordinary care to have remedied it, and that they failed
and neglected to exercise ordinary care to remedy it, and
if you further find and believe from the evidence that
the grab-iron gave or moved while the plaintiff was hold-
ing to it, if you find that plaintiff was holding to it, and
that such movement in the grab-iron contributed to cause
the plaintiff to fall from the side of the said car and to
be run over and his left arm cut off, if you find that
he did fall from the side of the said car and that he was
run over and that his left arm was cut off, and if you
further find and believe from the evidence that at the
time he received his injuries, if you find that he did re-
ceive injuries, and prior thereto the plaintiff was in the
exercise of ordinary care for his own safety, and that
the plaintiff was not guilty of any negligence that con-
tributed to cause his injuries, then your verdict should
be for the plaintiff and against the defendant, and if you
find for the plaintiff in this event, under all the evidence
in the case, in estimating and determining the measure
of his damages, if any, the jury may take into considera-
tion in connection with all the facts and circumstances in
evidence the character and extent of the plaintiff's in-
juries, if any, you find and believe from the evidence he
received and whether such injuries, if any, are per-
manent in their nature, and may find for him such sum
as in the judgment of the jury, under all the evidence
in the case, will fairly and reasonably compensate him
for the injuries you find and believe from the evidence he
received, if any, and the court further instructs you that
if you find as above, except that you find and believe
from the evidence that at the time the plaintiff was in-
jured, if you find that he was injured, he was not in the
exercise of ordinary care and that the plaintiff was at
the time guilty of negligence contributing to cause his
injuries, if any, then in that event your verdict should
be for the plaintiff and against the defendant, but in that
event the damages, if any, shall be diminished by you in

proportion to the amount of negligence attributable to the plaintiff.''

The jury rendered a verdict for the plaintiff for $15,000. Defendant duly appealed to this court.

I. Section 8608 (Compl. Stats. U. S. 1918) is as follows:

"8608. *Grab irons or handholds*—From and after the first day of July, eighteen hundred and ninety-five, until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab-irons or hand-holds in the ends and sides of each car for greater security to men in coupling and uncoupling cars. [March 2, 1893, c. 196, sec. 4, 27 Stat. 531.]''

Section 8618 required all such cars ''to be equipped with secure sill steps.''

It is contended by learned counsel for appellant that inasmuch as said Section 8608 required said secure grab-irons or hand-holds, only ''for greater security to men in coupling and uncoupling cars,'' and plaintiff was not so engaged when injured, he has no cause of action under said Safety Appliance Act. In support of the proposition, appellant cites St. Louis & San Francisco Railroad Co. v. Conarty, 238 U. S. 248. That case is distinguished in Louisville & Nashville Railroad Co. v. Layton, 243 U. S. 1. c. 620, and the doctrine clearly announced there that the benefit of the statute is not restricted to employees while coupling or uncoupling cars, but extends to all employees injured while using such defective appliances in the discharge of their duties. The same rule was applied in a later case of Minn. & St. Louis Railroad Co. v. Gotschall, 244 U. S. 66. [See also Director General v. Ronald, 265 Fed. 138.] So that we rule this point against the appellant.

II. (a) The plaintiff's case coming under the said Safety Appliance Act, it was sufficient that plaintiff

prove the existence of the defective grab-iron and that it was in part the cause of plaintiff's injury. It was not necessary to prove negligence on the part of the carrier in maintaining said grab-iron in a secure condition; its duty to do so was imperative and absolute. [St Louis & Iron Mountain Railroad Co. v. Taylor, 210 U. S. 281; Great Northern Railroad Co. v. Otos, 239 U. S. l. c. 351; C., B. & Q. v. United States, 220 U. S. 559; L. & N. Railroad Co. v. Layton, 243 U. S. l. c. 619; Callicotte v. Railroad, 274 Mo. 689.]

*Negligence.*

(b) So also plaintiff's contributory negligence, if any there was, is not only no defense to a cause of action arising under the Safety Appliance Act, but is not even to be taken into consideration in reducing the damages he may recover. The Employer's Liability Act (Sec. 3, 35 U. S. Stat. 65-66), provides: "Provided that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." The statute, in such cases, "abolishes the defense of contributory negligence not only as a bar to recovery, but for all purposes." [Grand Trunk Railroad Co. v. Lindsay, 233 U. S. l. c. 49-50; Callicotte v. Railroad, 274 Mo. 689.]

*Contributory Negligence.*

In our opinion the petition and evidence of plaintiff were sufficient to take the case to the jury under the Federal Safety Appliance Act and Employer's Liability Act, and therefore neither defendant's negligence nor plaintiff's contributory negligence was germane to the controversy. This has been so ruled by this court. [Callicotte v. Railroad, 274 Mo. 689.]

III. The loose condition of the grab-iron and the fact that the car was being used in interstate commerce being undisputed, the only question in the case relating to defendant's liability is whether that condition was a contributory cause of the plaintiff's injury. We think

Right to Recover.     plaintiff's evidence tended to show that it was, and the plaintiff's instruction fairly presented that question to the jury.    There are other matters of negligence, such as "sudden jerk" caused by failure to obey plaintiff's signal to stop and negligent failure to repair the grab-iron, submitted in plaintiff's instruction, but no recovery by plaintiff is authorized on account thereof unless the jury further believe from the evidence that the grab-iron was defective and contributed to plaintiff's injury.

IV.   The fact that plaintiff's instruction required the jury to find the defendant guilty of all the specifications of negligence alleged in the petition, when it was only necessary for him to prove the defective grab-iron and the consequent injury therefrom, does not involve an error of which appellant can complain.   Nor Unnecessary Act of Negligence.     does the fact, if it be a fact, which we need not decide, that there was no substantial evidence to sustain such superfluous and unnecessary matters, such as negligence in inspection and repairing the grab-iron, or in the "sudden jerk" of the train does not vitiate such instruction.   This court has expressly so decided.   [Callicotte v. Railroad Company, 274 Mo. 689.]

V.   The appellant complains vigorously of the length of the instruction given for the plaintiff.   The instruction is of great length, but it embraces matters which would usually be contained in at least three instructions, one as to liability of defendant, one as to the measure of damages, and one as to the diminution of damages in case plaintiff was guilty of contributory negligence.   This last section of the instruction was for the Unnecessarily Long Instruction.     defendant's benefit as it was entitled to no diminution of damages on account of contributory negligence on plaintiff's part.   The length of the instruction is, no doubt, attributable to the unnecessary burdens plaintiff assumed in regard to other

acts or specifications of negligence alleged in the petition besides violating the Safety Appliance Act as to the insecure grab-iron, all of which were matters of which defendant has no cause of complaint, because in its favor. While plaintiff's instruction was long it was clearly written and the attentive eye or ear would have no difficulty in following it. Its mere length, while objectionable, does not constitute reversible error. [Crowl v. American Linseed Oil Co., 255 Mo. 305; Andrew v. Linebaugh, 260 Mo. 651; Weller v. Railroad, 164 Mo. 180.]

Two cases are relied on by appellant as holding the contrary, but we think those cases are distinguishable from the case before us. In Williams v. Ransom, 234 Mo. 1. c. 66, this court held it was not error to refuse instructions on account of their length and verboseness, and so framed that no average jury could follow the train of thought contained therein, even though their theory was correct. But in that case the court, of its own motion, gave a correct instruction and other instructions which fairly presented the case. The court said at pages 71-72: "Upon the main issue the instruction given fairly presented the case, and it becomes unnecessary to undertake to analyze the verbose instruction asked by plaintiff." In Stid v. Railroad, 236 Mo. 398, verboseness in instructions was disapproved, but the instruction there condemned also conflicted with a proper instruction given for the opposite party.

In the case before us nine instructions were given for defendant, presenting its theory very clearly. Number 3 told the jury the plaintiff could not recover if plaintiff was injured while exchanging papers with the station agent by slipping off the ladder on the rear end of the car, notwithstanding there may have been a loose grab-iron on the front end of the car. Number 6 that the jury must find for defendant unless plaintiff established by a preponderance of the evidence that he was riding on the north end of the car and that his fall "was caused by a loose grab-iron" or by negligent handling of the

train. Number 7, that if the jury were unable to determine whether plaintiff's injury was the result of a loose grab-iron or a sudden jerk of the train, or due to other causes, the verdict must be for defendant.

Plaintiff's instruction was more favorable to defendant than defendant's own instructions, in that it did not authorize a recovery for plaintiff simply by reason of a sudden jerk or negligent handling of the train, as assumed in defendant's instructions, but in addition thereto, before the jury could find for plaintiff under plaintiff's instruction, the jury were also required to further believe from the evidence that the grab-iron was loose and defective and contributed to cause the plaintiff's injury.

We do not consider plaintiff's instruction, owing merely to its length—there being no error in it in other respects—in any way would mislead or confuse the jury to defendant's detriment.

VI. As to the amount of the verdict: The appellant says: "The plaintiff was guilty of contributory negligence as a matter of law; his recovery is full compensation as though he was not negligent, in violation of the act of Congress. The damages are therefore excessive." Inasmuch as plaintiff's contributory negligence, if any, was not an element or factor in the case, we must rule this point, too, against appellant.

It being stipulated by the parties that James C. Davis, Director General of Railroads, the present designated agent provided for in Section 206 of the Transportation Act of 1920 and successor of John Barton Payne in such office, may be substituted as appellant in this cause, accordingly, said James C. Davis is so substituted. The judgment of the lower court is therefore modified by substituting said James C. Davis, Director General of Railroads, as defendant therein, and as so modified, finding no error in the proceedings below, the judgment of the circuit court is affirmed. *Ragland, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court, except that it is ordered that if respondent will remit $2500 the judgment will be affirmed for $12,500, as of the date of the verdict; otherwise, the judgment will be reversed and the cause remanded. *James T. Blair, C. J.*, and *Higbee, Elder* and *Walker, JJ.*, concur; *Woodson, J.*, thinks the judgment should be reduced to $10,000, but concurs in other respects; *Graves, J.*, dissents in a separate opinion, in which *David E. Blair, J.*, concurs.

GRAVES, J. (dissenting).—I dissented in Division for the reason that the principal instruction for the plaintiff was of such length that no average jury could carry the thought supposed to be in the instruction. I think that there are substantial errors in this instruction, leaving out of consideration its length. However, its length has been sufficiently condemned by this court, and I go no further. I doubt whether or not there is liability, but this I will not discuss, as the length of this instruction condemns the trial *nisi*. [Williams v. Ransom, 234 Mo. l. c. 66; Stid v. Railroad, 236 Mo. 398; Crowl v. American Linseed Oil Co., 255 Mo. 331; Andrew v. Linebaugh, 260 Mo. 651; Heman v. Hartman, 189 Mo. 20; Sidway v. Live Stock Co., 163 Mo. 376.]

Think of five printed pages for an instruction in an ordinary damage suit! It shocks the experience of both bench and bar. No jury can carry the real thread of such an instruction, if it can be said that it has a thread. For this reason, if not for others, I dissent. *David E. Blair, J.*, concurs in these views.