JOHN M. TAYLOR v. LUMAGHI COAL COMPANY, Appellant.—No. 38756.
181 S. W. (2d) 536.

Division One, June 5, 1944.

Rehearing Denied, July 3, 1944.

*Moser, Marsalek & Dearing* for appellant.

1214

*Mark D. Eagleton* and *William H. Allen* for respondent.

1216

1218

HYDE, J.—This is an action for damages for personal injuries. Plaintiff had verdict and judgment for $15,000.00. Defendant has appealed.

Defendant contends that the court should have directed a verdict for it on the ground that the Illinois Workmen's Act applied to plaintiff's injury. It is conceded that, if this were true, plaintiff's only right would be to make claim under that act against his employer, the Pennsylvania Railroad; and that any action against a third party for his injury would be solely in his employer. (Ill. Rev. Stat. 1941, Chapter 48, Secs. 139, 143, 166.) Plaintiff claims that his work brought him under the Federal Employers' Liability Act (45 U. S. C. A. 51) and therefore excluded him from the operation of the Illinois law.

Plaintiff was a brakeman on the crew of a freight train of the Pennsylvania Railroad, running regularly between Greenville, Illinois and East St. Louis, Illinois. The train would go from Greenville to East St. Louis on one day and on the following day make the return trip from East St. Louis to Greenville. Local switching was done by the crew on these runs.

On the day of plaintiff's injury the train left Greenville with an interstate car destined for Mayfield, Kentucky. It picked up another interstate car at Pierron with destination St. Louis, Missouri. Two more interstate cars were to be added to the train at Collinsville, one for New Orleans, Louisiana and the other for Cloquett, Minnesota. Upon arrival at Collinsville and before picking up the two interstate cars there, the train was left on a track paralleling the main track while the crew with the engine went two miles east to the defendant's yards which were located at its coal mine. It was the daily task of this crew to do switching for defendant in these yards.

Defendant's yards were entered at the east end. There was a rising grade toward the east so that cars could be moved westwardly by merely releasing the brakes and allowing them to run down grade. There was a silo at the east end of the yards where coal was brought from the mine in railroad coal cars to be there loaded on trucks. Some distance west of the silo was the mine tipple where defendant operated a coal washing pit. Dump cars loaded with coal were moved east from the mine to the washing pit by a car puller, which functioned by means of a drum winding up a cable and was operated by steam power. As cars were unloaded at this pit, they were often moved east by the car puller on a track called the screening track, used for temporary storage of empty cars. South of the screening track was another track called the run-around track which was used by plaintiff's switching crew for their movements through the

yard. About three hundred feet east of the washing pit, there was a cross-over track connecting the run-around track and the screening track. Defendant's yards extended about 2000 feet west of the washing pit and tipple.

When the switching crew arrived in defendant's yards, they obtained a switching list from defendant's office. The average time required for their switching work was about two hours. No other railroad crew worked in defendant's yards. On the occasion of plaintiff's injury, the first work was to clear the cars off of the run-around track. The empty cars were pushed east on the run-around track, thence on the cross-over to the screening track and thence on to a storage track farther east, known as the pond track. The loaded cars were then assembled, pushed along the run-around track to the silo and left there. The crew returned with their engine along the run-around track to make the next movement, stopping at the cross-over switch so that it would be set, when they came back with more empty cars, to go to the pond track by way of the screening track. They then proceeded some distance west of the tipple, picked up 11 empty coal cars and came back east with them. Plaintiff was on the head car. It was dark and drizzling rain so that he could only see two or three car lengths ahead. While on the cross-over track, plaintiff saw a car standing on the screening track so close that it obstructed the cross-over. Fearing a collision would cause the car upon which he was riding to overturn, he gave a stop signal with his lantern and then jumped from the car. This caused his injury. Three cars were derailed by the collision but did not overturn.

 It is not contended that there was any failure to make a case of actionable negligence for the jury. Defendant's contention is that the work being done by plaintiff and his crew in defendant's yards was only part of its mining operations carried on there and was wholly intrastate work. Defendant points out that, on this occasion, the crew brought no cars into its yards and took none away, and that there was no evidence that any of the coal it mined was shipped outside of the State of Illinois. Defendant, therefore, says that no part of plaintiff's duties in the operations under way at the time of his injury was in interstate commerce, or in furtherance of such commerce, and did not affect such commerce in any manner. Section 51, as amended in 1939, is in part as follows:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce. . . . (Next sentence from 1939 amendment) Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this

Act, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this Act.''

It is, of course, true that, prior to the 1939 amendment to Sec. 51, it was held that liability under the Act was confined ''to injuries occurring when the particular service in which the employee is engaged is a part of interstate commerce'' [Illinois Central R. Co. v. Behrens, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051.] This required a showing that the character of the particular task being done at the time of the injury was interstate; and, therefore, a brakeman on an interstate train was not under the Act when temporarily engaged in local switching of empty cars to stock chutes. [Siegel v. M-K-T R. R. Co., 342 Mo. 1130, 119 S. W. (2d) 376, and cases cited; certiorari denied 305 U. S. 654, 59 S. Ct. 249, 83 L. Ed. 423.] Defendant says that ''it was the intent of Congress by the 1939 amendment to extend the Federal Employers' Liability Act to cover cases of employes who, at the very moment of the injury, might be moving an intrastate car, or be engaged in other intrastate work, but who at the time of such injury were performing work which in whole or in part directly, closely and substantially affected interstate commerce.'' However, it was already the law, prior to the amendment, that the movement of intrastate cars would be under the Act if such movement was in fact in direct furtherance of interstate work. [See McNatt v. Wabash R. Co., 341 Mo. 516, 108 S. W. (2d) 33 and cases cited.] The reason for the amendment was that the old law was very difficult to apply because many railroad employees would often and rapidly pass from one class of employment to another during the same day. In fact, an employee frequently might not know in which class of work he was engaged. We think it had a broader purpose than defendant's contention gives it.

It seems to us that the test, ''any part of whose duties shall be in furtherance of interstate commerce'', means to include, at least, any part of such employee's duties on the particular mission or continuous operation to which he is assigned for the particular work period or tour of duty on which he has commenced to serve. In this case, plaintiff was assigned as a member of the crew of a train, which was interstate in character (containing an interstate car) when it started from Greenville, to assist in taking this train to its destination. Part of his duties thereafter were to do local switching (which he was doing in defendant's yards when he was injured) and these movements when considered separate and apart from his whole mission were intrastate in character. However, his principal task for his whole work period on that day was interstate work, namely: to take an interstate train to its destination, adding more interstate cars to it on the way. We hold this was sufficient to make the Act, as amended, applicable to him during his whole trip with this train from its departure to its arrival at its destination including the

incidental work of local switching. This is the interpretation given to the Act by the decisions since the 1939 amendment. [Ermin v. Pennsylvania R. Co. (D. C.), 36 Fed. Supp. 936; Edwards v. Baltimore & O. R. Co. (7th Cir.), 131 F. (2d) 366; Prader v. Pennsylvania R. Co. (Ind. App.), 49 N. E. (2d) 387, 390; Southern Pacific Co. v. Industrial Acc. Comm., 113 Pac. (2d) 763, S. C., 19 Cal. (2d) 271, 120 Pac. (2d) 880; Lewis v. Industrial Acc. Comm., 19 Cal. (2d) 284, 120 Pac. (2d) 886; Louisville & Nashville R. Co. v. Potts, 178 Tenn. 425, 158 S. W. (2d) 729; Piggue v. Baldwin, 154 Kan. 708, 121 Pac. (2d) 183; Agostino v. Pennsylvania R. Co. (D. C.), 50 Fed. Supp. 726, 728, 729; Missouri Pac. R. Co. v. Fisher (Ark.), 177 S. W. (2d) 725; Wright v. New York Central R. Co., 263 App. Div. 461, 33 N. Y. S. (2d) 531, affirmed 288 N. Y. 719, 43 N. E. (2d) 97, certiorari denied 317 U. S. 668, 63 S. Ct. 73, 87 L. Ed. 47.] We think it is the correct construction of the amendment and its purpose. Therefore, the Illinois Workmen's Compensation Act was not applicable to plaintiff. [New York Central R. Co. v. Winfield, 244 U. S. 147, 37 S. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139]; and he had the right to bring a common law action against the third party whose negligence caused his injury. [Lee v. Central of Georgia R. Co., 252 U. S. 109, 40 S. Ct. 254, 64 L. Ed. 482; Cott v. Erie R. Co., 231 N. Y. 67, 131 N. E. 737; Schosboek v. Chicago, M., St. P. & P. R. Co. (Wash.), 71 Pac. (2d) 548.]

Defendant further contends that, if the 1939 Amendment to Sec. 51 be construed to cover plaintiff at the time of his injury, it is unconstitutional as in conflict with Art. I, Sec. 8 and amendments IX and X, U. S. Constitution, citing the first and second Employers' Liability cases; Howard v. Illinois Central R. Co., 207 U. S. 463, 28 S. Ct. 141, 52 L. Ed. 297 and Mondou v. New York, N. H. & H. R. Co., 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 327; and also a case decided since the 1939 Amendment, Thomson v. Industrial Commission, 380 Ill. 386, 44 N. E. (2d) 19, certiorari denied, 318 U. S. 755, 63 S. Ct. 994, 87 L. Ed. 1129. However, the first Employers' Liability Act, declared unconstitutional in the Howard case, was broader than the 1939 amendment to Sec. 51, because it declared such employer's liability to be in favor of "any of its employees." This, of course, could cover employees whose duties were wholly and solely intrastate. But the second Employers' Liability Act did not reach to the limits of congressional power. In Illinois Central v. Behrens, supra, the U. S. Supreme Court said: "Considering the status of the railroad as a highway for both interstate and intrastate commerce, the interdependence of the two classes of traffic in point of movement and safety, the practical difficulty in separating or dividing the general work of the switching crew, and the nature and extent of the power confided to Congress by the commerce clause of the Constitution, we entertain no doubt that the liability of the carrier for injuries suf-

fered by a member of the crew in the course of its general work was subject to regulation by Congress, whether the particular service being performed at the time of the injury, isolatedly considered, was in interstate or intrastate commerce.'' In Prader v. Pennsylvania R. Co., supra, the court said: ''By enactment of the 1939 amendment, Congress did the very thing the court in the above case (Behrens case) said it had the power to do and, although there are relatively few cases construing said amendment, in each instance it has been held valid.'' (See also L. & N. R. Co. v. Potts, supra, where plaintiff, a member of a switching crew doing general work, was injured on a separate intrastate task; and the court said ''that operation was a mere incident to the general business of switching cars at Columbia''.)

While the ruling of the Supreme Court of Illinois in Thomson v. Industrial Commission, supra, might be considered as ▇ making a narrower construction of Congressional authority under the Commerce Clause than would be necessary to cover his case (although it ruled a different factual situation than that in this case or in the Behrens case), it was made before the recent rulings of the United States Supreme Court concerning watchmen, which seem to conflict with it, such as Kirschbaum Co. v. Walling, 316 U. S. 517, 62 S. Ct. 1116, 86 L. Ed. 1638; and Walton v. Southern Package Corp., 320 U. S. 719, 64 S. Ct. 320, 88 L. Ed. 315. We hold that the factual situation in this case is substantially the same as that considered in the Behrens case, and, therefore, that the 1939 amendment to Sec. 51 was not unconstitutional in covering it.

▇ Defendant also assigns error in giving plaintiff's main instruction, No. 2, on the ground that it omits the necessary elements of liability under the theory upon which it is based. [Citing Kleiber v. People's R. Co., 107 Mo. 240, 17 S. W. 946; Delfosse v. United R. Co. (Mo. Sup.), 201 S. W. 860.] This instruction, after hypothesizing the factual situation of leaving a car where it obstructed the crossover (which was the negligence charged), required the following additional finding: ''that on said occasion the plaintiff was riding upon one of a cut of cars, as aforesaid, in the nighttime *when it was dark* and that while so doing *he was,* by reason of said insufficient clearance, if you so find, *brought into close and dangerous proximity,* if you so find, *to the aforesaid car* which was then and there obstructing and fouling the said cross-over, if you so find, and that by reason thereof, if you so find, *the safety of the plaintiff was thus and thereby imperiled*; and if you further find that in order *to avoid said impending peril,* if you so find, the *plaintiff did jump from said car* upon which he was riding, and that he was thus and thereby injured.'' (Our italics.)

In the Delfosse case, where a passenger jumped from a street car because of fear of a collision which did not occur, this court said: ''in a case of this kind, in order to recover the plaintiff must show:

(1) Negligence of the defendant; (2) that the peril or apparent peril was caused by such negligence; (3) that the apprehension of peril was a reasonable one; and (4) that the appearance of danger must have been imminent, leaving no time for deliberation, when judged by the circumstances as they appeared, and not by the result.'' Defendant says plaintiff's instruction No. 2 herein does not cover the last' three requirements of liability. Clearly the facts hypothesized, if true, would conclusively show that the peril of collision was caused by defendant's negligence (element 2) in leaving the car where it obstructed the cross-over. Furthermore, the instruction required a finding of actual impending peril which would go beyond a mere reasonable apprehension of peril. Therefore, we think the italicised portions cover elements 3 and 4 in such a way that they could not be misunderstood by the jury. While these could, of course, have been more specifically stated, in view of all the facts hypothesized, including the darkness, and the conceded fact of a collision violent enough to derail the cars, we cannot hold this instruction prejudicially erroneous.

██ Defendant contends that the verdict of $15,000.00 is excessive. Plaintiff was 55 years old at the time of his injury, and had worked for the railroad for more than 30 years. He was earning $200.00 per month. Plaintiff's injury was a tearing loose of both semilunar cartilages from the lower bone of the knee joint. This injury was very painful and caused his knee to be sore and swollen, whenever he attempted to do any heavy work. His physicians said it was a permanent injury which would prevent plaintiff from doing heavy manual labor; that when these cartilages are torn loose they never reattach; and that an operation to remove them would not help a man of his age but might leave him in worse condition. Plaintiff attempted to go back to work in April 1941 (he was injured in December 1940) and worked about half time during May. This work caused his knee to swell and become sorer and more painful so that he had to quit work in June. Plaintiff still suffered pain at the time of the trial (1943) particularly in going up and down stairs or on a quick movement or twist.

While plaintiff suffered a serious and painful injury, he had no broken bones and still is able to use his leg in walking and light activity. In Wolfe v. Payne, 294 Mo. 170, 241 S. W. 915; Fitzsimmons v. Mo. Pac. Ry. Co., 294 Mo. 551, 242 S. W. 915; Foster v. Davis (Mo. Sup.), 252 S. W. 433; Thompson v. Smith (Mo. Sup.), 253 S. W. 1023; Leighton v. Davis (Mo. ██ Sup.), 260 S. W. 986; Rose v. St. Louis-San Francisco Ry. Co., 315 Mo. 1181, 289 S. W. 913; Cole v. St. Louis-San Francisco Ry. Co., 332 Mo. 999, 61 S. W. (2d) 344, judgments were reduced from larger amounts to between $10,000 to $12,500, where an arm or leg was amputated; $10,000 being the usual standard where the amputation was below the knee or elbow. Where larger

amounts have been allowed, there has been shown unusual loss of earnings, or complications, requiring numerous operations and resulting in large expenditures for medical and hospital attention. See Gordon v. Muehling Packing Co., 328 Mo. 123, 40 S. W. (2d) 693; also Evens v. Terminal R. Ass'n (Mo. Sup.), 69 S. W. (2d) 929. Considering these authorities, and others including broken bones, where injuries caused at least as great incapacity (See Morris v. Atlas Portland Cement Co., 323 Mo. 307, 19 S. W. (2d) 865; Harlan v. Wabash R. Co., 335 Mo. 414, 73 S. W. (2d) 749; Mrazek v. Terminal R. Assn., 341 Mo. 1054, 111 S. W. (2d) 26; Walsh v. City of St. Louis, 346 Mo. 571, 142 S. W. 465), we think that $10,000.00 would be the maximum which could be allowed to stand in this case.

If plaintiff will within ten days enter a remittitur of $5,000.00 as of the date of judgment, the judgment of the trial court will be affirmed for $10,000.00; otherwise the judgment will be reversed and the cause remanded. All concur except *Douglas, J.,* not sitting.