### RICE v. BALTIMORE & O. R. CO.
No. 5265.

Circuit Court of Appeals, Sixth Circuit.
July 2, 1930.

HICKENLOOPER, Circuit Judge, dissenting.

D. P. Bowden, of Cleveland, Ohio, for appellant.

U. C. DeFord, of Youngstown, Ohio (Harrington, DeFord, Huxley & Smith, of Youngstown, Ohio, on the brief), for appellee.

Before DENISON and HICKENLOOPER, Circuit Judges, and KILLITS, District Judge.

KILLITS, District Judge.

■ Rice, a fireman for the defendant railroad company, was actionably injured while in the company's service in West Virginia. Plaintiff was a citizen and resident of West Virginia, and the defendant company was a Maryland corporation, and, consequently, an "inhabitant" of Maryland for general jurisdictional purposes; USCA, title 28, § 112, Annotations, page 50. Jurisdiction was invoked in the Northern District of Ohio,

where defendant does business, on the allegation that the train movement involved was in interstate commerce. It was alleged that plaintiff was injured as the result of a defect in a coupling buffer between the engine and tender which broke under a special strain. The answer admits defendant's corporate organization and operations as alleged in the petition, and, generally, that plaintiff was injured in its service, but specially denies that when so injured plaintiff was engaged in interstate commerce, and generally denies every other allegation. At the conclusion of the plaintiff's testimony, a verdict was directed for defendant on the court's judgment that an interstate movement was not disclosed by the testimony.

The crew of which Rice was a member was charged with a general task to place cars on the sidings of coal mines between the terminals of its movement, about thirteen miles apart—Clarksburg and Haywood, W. Va. It had no duties distinguishing it from an ordinary yard switching crew. The starting point was Clarksburg. The immediate task when Rice was injured was to collect empties on the Haywood and Lumberport storage tracks, these points being on opposite sides of a river, each on a main line track of defendant company connected by a so-called switching "cut-off" crossing the river. The only movement pleaded, as an interstate operation, was the alleged backing of the engine and several cars onto a storage track nearest to the cut-off track, and on the Haywood side, in order that this part of the switching train might clear the Haywood main track for an interstate train. About ten minutes before this train was due the accident occurred. The greater part of the record, however, was devoted to an attempt to show that the general operation of this switching crew on that occasion was to collect coal cars ordered by several of the mines to be used for interstate service, but not then specifically selected or designated for any particular siding or prospective use.

One mine, the Dawson, had indeed ordered delivery of thirty-six cars which were thereafter loaded and consigned for interstate shipment, but the evidence most clearly shows that none of such cars were in the Lumberport-Haywood movement, that they had been placed at the Dawson mine some hours before the accident. What there is in the testimony to throw any doubt on the certainty of this conclusion of fact is so vague and inconclusive as to be negligible for any purpose. Davlin v. Henry Ford & Son, Inc.,

(C. C. A.) 20 F.(2d) 317. It is also shown that at about 10 o'clock, or about four hours after Rice's injury and on the return trip of Rice's crew, seven empties were delivered to the Corona mine, which were loaded in the afternoon and thereafter weighed and billed and consigned for interstate shipment. The evidence that any one of these Corona cars was in the cut at the time of the accident is so scant as to make such a conclusion very speculative; Davlin v. Ford, supra. The fact question upon which there is even a conflict in testimony, being the existence of jurisdiction, should affirmatively and distinctly appear, Robertson v. Cease, 97 U. S. 646, 649, 24 L. Ed. 1057; and in this record a somewhat definite implication is carried that no Corona car was in the cut. But, assuming the contrary to be true, still, we think, it cannot be said that that fact gave the movement an interstate character.

The crew had orders, simply, to collect empties for the various mines served on this run. No particular car was spotted or selected for any special siding or ultimate destination, nor does it appear that the defendant knew, in any instance, the purpose for which the several mines were ordering cars. The trial court properly held, in effect, that, respecting this precise condition, interstate character of the movement on the cut-off and in the Haywood yards had not developed when the injury to plaintiff was sustained. Applying not only to the Corona cars but to those delivered to Dawson, we consider that a car should not be held to have entered into interstate commerce when still a part of a purely local switching haul, and not specifically "spotted" for the ultimate use, if, in fact, the prospective shipper does intend, following the switching, to load and bill for interstate shipment whatever car he may happen to receive; that interstate character attaches (at the earliest) to such car only after it is delivered by the carrier and appropriated by the shipper for interstate loading and hauling. Grigsby v. Southern Ry. (C. C. A.) 3 F.(2d) 988; Baldassarre v. Pennsylvania R. Co. (C. C. A.) 24 F.(2d) 201.

The immediate operation was to collect cars on the cut-off with the engine facing toward Haywood. So many had been gathered that it was necessary to move the engine and a few adjacent cars off of the cut-off onto a siding, by way of the main track at Haywood, in order to clear for the interstate train. Rice says that in this particular movement he was injured. On this point he

is contradicted by the only other witnesses (two) who testified on the subject of the precise causal operation. These witnesses, the conductor and the brakeman, were called by plaintiff, and, if they are to be believed against him, the causal movement was not in interstate commerce. Applying, however, the familiar rule that the pertinent testimony should be considered most favorably to the party against whom the motion to direct is made, there arises the perplexing and frequently recurring question where the line should be drawn beyond which may not be invoked the Federal Employers' Liability Act (45 USCA §§ 51–59) to support jurisdiction which would not otherwise exist in the chosen trial court.

In Pedersen v. Del., Lack. & West. R. R., 229 U. S. 146, 150, 152, 33 S. Ct. 648, 649, 57 L. Ed. 1125, it is said:

" * * * there can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce, and while the employee is employed by the carrier in such commerce. * * *

"The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?"

In Shanks v. Del., Lack. & West. R. R., 239 U. S. 556, 558, 36 S. Ct. 188, 189, 60 L. Ed. 436, L. R. A. 1916C, 797, the test question is formulated as follows: " * * * the true test of employment in such commerce in the sense intended is, Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?"

The cases cited exhibit typical applications of the rule in sustaining and denying liability under the act. In the first case Pedersen was a member of a crew engaged in replacing an existing girder and inserting a new one in a bridge on the track used in interstate and intrastate commerce, and was injured while carrying to the place of work materials to be used therein. It was held that this work was so closely and directly connected with interstate commerce within the meaning of the act as to give a right of recovery thereunder. Shanks, in the second case, was employed in the repair shop of a railroad extensively engaged in interstate as well as intrastate commerce. He was injured in changing the location of a head countershaft which conveyed power to machinery used in repair work for rolling stock, indifferently employed in both classes of commerce. This line of employment was held to be so remotely and incidentally connected with interstate commerce as not to establish a right of action under the act for an injury therein received.

In the opinion in Hallstein v. Pennsylvania Railroad Co., 30 F.(2d) 594 (C. C. A. 6), is collated a large number of cases which stand on either side of the line dividing the principal cases cited above. To these given in that opinion may be added cases recently decided by this court, namely, Pennsylvania Railroad Co. v. Morrison, 3 F.(2d) 986; Baltimore & Ohio Railroad Co. v. Darling, 3 F.(2d) 987; Youngstown & O. R. R. v. Halverstodt, 12 F.(2d) 995; Sullivan v. Wabash Railway Co., 23 F.(2d) 323, 324; Baldassarre v. Pennsylvania Railroad Co., supra; and Grigsby et al. v. Southern Railway Co., supra.

The principle derived from the authoritative decisions is that the act applies to a cause of action occurring to an employee (a) if then his general service is primarily and directly in the interest of interstate commerce, and it is seen that he was at the time engaged in a service necessarily precedent or consequent to or in the full execution of the primary object, or (b) that the injury was incurred during such a deflection from the direct line of execution thereof, that it should be regarded as but incidental or contingent thereto and reasonably necessary to its completion. To serve interstate commerce must be seen to have been, from the outset, a substantial purpose of the work in which the injured employee was then engaged.

This formula reflects the principle of every important decision in which the considered incident is found within the act or otherwise. When one or more of its necessary qualifications is not supported by evidence applying to the conditions of the injury, the cause of action is not under the act. There lies the distinction between the Pedersen and Shanks decisions; between those of Sullivan and Grigsby, and of the large number of contrasting decisions where the line of discrimination is not so clear at first sight. It meets the rulings in the Baldassarre Case and the Yurkonis Case 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397, where, as in Shanks' Case, the line of service had indeed a remote relationship to the facilitation of interstate commerce. In each of these one or more of the determinative qualifications of the service were absent.

Its application to the case at bar justifies the action of court below in finding

against jurisdiction under the Federal Employers' Liability Act. Rice's crew was generally engaged in a switching operation not shown to have had any direct or necessary relation to interstate commerce. The injury came to him, if we accept his testimony as to where it occurred, in a movement which was the result of a contingency immediately arising out of the fact that too many cars had been unnecessarily collected on the "cut-off" to hold the train clear of the Haywood main track, and, therefore, was required the moving of the engine and a few attached cars to the siding that the interstate train might not be blocked. We may notice that switching operations generally, in small yards such as that at Haywood, might contingently involve a temporary entrance upon a main track which is employed jointly in intra and inter state commerce, and that such use of a main track is but an unimportant and casual incident of a switching operation, having no general relation to interstate commerce. Such a fleeting interruption of an intrastate switching operation, because of a contingent and unnecessarily created condition, in order to temporarily clear a main track then required to be used in the switching movement, that that track may be open to an oncoming interstate train having the right of way, is so incidentally and remotely in the interest of interstate commerce as not to bring into application the act. In Sullivan v. Wabash Ry. Co., supra, where the injury occurred while the switching crew was on a side track, shunting an intrastate car, just taken out of an interstate train whose destination had not yet been reached, it was held that the dropping of the intrastate car "was merely incidental to the dominant interstate task on which Sullivan was engaged at the moment of the injury," and that, therefore, it did not affect his right to claim the favor of the act. In the instant case the dominant task of Rice's crew was intrastate—he was injured in a movement which, while instantly related to interstate commerce, still was a mere incident to the real duty, nothing more than a casual circumstance not necessary to the full execution of the dominant task, for it does not appear that the crew was bound to collect at one time more cars than the cut-off switch could accommodate.

■ In his opening brief plaintiff appellant says: "The sole question before this, the United States Court of Appeals, is that of the identification of both the appellant and appellee in interstate commerce at the time of the accident, and the solution of that question." The oral arguments, also, were ad-dressed altogether to this one point. If that were the only question, the foregoing discussion and conclusion dispose of the appeal. In consideration of the record, however, the court sua sponte queried whether the form of the pleadings, especially the character of the answer, may not have involved the defendant in a waiver of its right to dispute the venue, wherefore plaintiff should have been entitled to go to the jury on the right of recovery under the Boiler Inspection Act (45 USCA § 22 et seq.). Thereupon counsel for the parties were invited to submit supplemental briefs on the status of the action where brought because the plaintiff also rested a right of recovery upon that act. Such briefs were forthcoming but neither discusses the question of waiver. In plaintiff's supplemental brief is invoked an ingenious theory that, as the proof discloses that the action may be within the Boiler Inspection Act, it falls, also, as to jurisdiction, within the terms of the Federal Employers' Liability Act because the Boiler Inspection Act is "a federal regulation as to commerce between the states," reaching the conclusion that both acts (Safety Appliance [45 USCA § 1 et seq.] and Boiler Inspection) "being Federal Statutes, recourse for violation thereof is pronounced by the Judicial Code. If an injured railroad employee is able to couple up, as a cause for his injury, a violation of the Act with the requirements defined by the Employers' Liability Act, he then increases the places where he may institute an action for damages against the railroad company by one, to wit, in a jurisdiction where the defendant railroad company is doing business, whether the jurisdiction chosen be the residence of the plaintiff, or of the defendant, or otherwise." Texas & Pacific Ry. v. Rigsby, 241 U. S. 33, 36 S. Ct. 482, 60 L. Ed. 874, and Napier v. Atlantic Coast Line Rd., 272 U. S. 605, 47 S. Ct. 207, 71 L. Ed. 432, are cited in support of this theory. Neither of these decisions is in point to any degree. The first but adjudicates jurisdiction, without regard to the character of the movement, in an appropriate federal court for an action upon an injury caused by a defective appliance, that suit being within the state of which both parties were inhabitants; the second decides only that the federal acts occupy the field to the exclusion of state legislation. While the Federal Employers' Liability Act does indeed devolve jurisdiction in a federal court of the district where the defendant company does business, irrespective of the district of "inhabitancy" of either party, when the proximate cause of

injury was a defective appliance within either the Safety or Boiler Acts, such jurisdiction is given only when the movement in which the injury is received is in interstate commerce, Act of April 22, 1908, § 1, and section 6, as amended by Act April 5, 1910, § 1, USCA, title 45, §§ 51 and 56, noting, particularly, the limiting effect of the opening sentence of section 51.

Both this new proposition as well as that of waiver were considered in Steidle v. Reading Co. (C. C. A.) 24 F.(2d) 299; certiorari denied 278 U. S. 609, 49 S. Ct. 13, 73 L. Ed. 535. In addition to the report of the decision we have examined the full record of that case, and therein we find facts and record, including pleadings, in complete analogy to those of the instant case, except that in the Steidle Case the action was plainly jointly upon an injury alleged to have been incurred in an interstate movement and as a result of a violation of the Safety Appliance Act, rather than the Boiler Inspection Act, a distinction involving no different question. There, as here, venue jurisdiction existed in the district of suit only if the involved movement was in interstate commerce and if the venue was for lack of such movement inappropriate, power to proceed could come only by consent or equivalent waiver by the defendant. The trial court held that the proof showed no interstate causal movement, and dismissed for want of jurisdiction. On appeal it was held that the answer did not involve a waiver of venue. The opinion covers every phase of the questions arising herein (save the manner in which the defect was claimed at the trial), and the application of it to the record before us, if we should follow it, would compel an affirmance here.

The best that can be said for the plaintiff from this record, on the question of defendant's waiver, is that its presence is not plain. It is clear that the plaintiff never claimed it, but that, on the contrary, his counsel was content to let the case be disposed of below on the theory that none existed, and that the question of jurisdiction as dependent on interstate commerce was the only question involved. To that only has all the argument been addressed. It is quite plain, moreover, that the trial court was of the opinion that venue had not been conceded, impliedly or otherwise, by the defendant. In his oral opinion sustaining defendant's motion to dismiss it was said: "Now, the plaintiff relied upon the fact that he was engaged in interstate commerce, and, while he lives in West Virginia, sued the Baltimore & Ohio Railroad up here because it was doing business here. He has that right, under the Federal Act, if he establishes interstate commerce; otherwise, the Court is without jurisdiction. Now, the Court has found, after a consideration of all of the evidence which he has been offered here in support of the plaintiff's claim, he was not engaged in interstate commerce, that it has not been proved, and that there was not interstate commerce, which relegates him, so far as this Court is concerned, to bringing this action in West Virginia, either in the Federal Court or in the State Court there. And, of course, as I have stated, the plaintiff's case is not being decided upon its merits, nor is the plaintiff being precluded in his right of recovery against the railroad company, in the proper forum."

■ In face of this plain indication that the trial court was dismissing the case because of an opinion that the defendant, an interstate causal movement not having been shown, was not subject to suit in his district, plaintiff stood by, not claiming waiver, as he has never since claimed it. Under these circumstances we are not called upon to apply the Steidle decision. The fact of waiver being at best a debatable question, and never presented to the trial court, error should not be found because it was assumed that there had been no waiver. We do not overlook the normal effect of a plea to the merits as a waiver of any right to challenge the venue, but it does not always have that effect; defendant's duty is to make the objection "at the first opportunity"; when those facts are first developed at the trial which negative plaintiff's pleadings in this respect, that gives "the first opportunity," and the former plea is not a waiver. This exception is as well established as the rule. The lack of any effective waiver in this case by the plea would be clear, except that the railroad knew the facts all the time. Under those circumstances, the duty of defendant to deny the venue by some special preliminary plea or motion is not settled by procedure nor entirely clear in principle. For this reason we have said that the existence of the waiver was, at the best, for plaintiff, doubtful.

■ The judgment is affirmed, but one matter seems to need attention. Finding territorial jurisdiction wanting, and nothing else before it, the court below, instead of directly dismissing the case for that reason, with judgment for defendant's costs, directed a verdict for the defendant, which was had, followed by a judgment for costs. Lest this action should embarrass plaintiff in subse-

quent proceedings in an appropriate forum, the case should go back for the modification of the judgment. A court always has power to find the facts necessary to determine whether there is jurisdiction, and we suppose a fact so found is adjudicated between the parties, no matter what conclusion as to jurisdiction it leads to. The judgment should recite that the plaintiff was not engaged in interstate commerce and that, for that reason, the case is dismissed for lack of jurisdiction in the Northern District of Ohio and without prejudice to a suit in the proper forum, based upon any rights other than these given by the Employers' Liability Act. Neither party is allowed costs in this court.

HICKENLOOPER, Circuit Judge (dissenting).

I am unable to concur in the disposition made of this case. The plaintiff was injured by the breaking of a dangerously defective "chafing block," which is an appurtenance of the locomotive, within the meaning of the Federal Boiler Inspection Act (45 USCA § 23). The amended petition alleged this fact and specifically predicated plaintiff's right of recovery thereon, as well as upon the Federal Employers' Liability Act. Neither claim should be considered subordinate or ancillary to the other. To this petition the defendant answered to the merits, that is, it denied the applicability of the Federal Employers' Liability Act, asserting that neither the plaintiff nor the defendant was engaged in interstate commerce at the time and in the train movement complained of; but defendant merely denied generally the other allegations of the petition. Diversity of citizenship was also specifically alleged and is now admitted.

The question is not, and never was, therefore, one of jurisdiction, but of venue. The present complaint of the defendant is not that the federal courts, as such, did not have jurisdiction, for such federal jurisdiction appears both because of diversity of citizenship, and because of the existence of a federal question. St. Louis, I. M. & S. Ry. v. Taylor, 210 U. S. 281, 293, 28 S. Ct. 616, 52 L. Ed. 1061. It is rather, that the action was brought in the wrong district. 28 USCA § 112 (Judicial Code, § 51). And this precise complaint, certainly as regards the Boiler Inspection Act, is asserted here for the first time. It is not pleaded. It is not made a part of the motion for a directed verdict. It is not included in defendant's denial that the work being done was incidental to interstate commerce, for that defense is directed to the merits of but one branch of the case—

to the right of recovery under the Employers' Liability Act. Cf. Binderup v. Pathe Exchange, 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308.

It must, of course, be conceded as established law, that the Safety Appliance and Boiler Inspection Acts apply to all carriers doing an interstate business (the defendant is admittedly such a carrier), whether or not the employee was at the time engaged in work incidental to or a part of such commerce. Cf. Southern Ry. Co. v. U. S., 222 U. S. 20, 32 S. Ct. 2, 56 L. Ed. 72; Texas & P. Ry. Co. v. Rigsby, 241 U. S. 33, 36 S. Ct. 482, 60 L. Ed. 874; Napier v. Atlantic Coast Line, 272 U. S. 605, 607, 47 S. Ct. 207, 71 L. Ed. 432. The duty of compliance with the provisions of these acts is absolute. Louisville & N. R. Co. v. Layton, 243 U. S. 617, 620, 37 S. Ct. 456, 61 L. Ed. 931; Baltimore & O. R. Co. v. Groeger, 266 U. S. 521, 45 S. Ct. 169, 69 L. Ed. 419. The opinion of the majority of the court in this case recognizes that the plaintiff was "actionably injured," and, indeed, this is apparent under the authorities, whether the right to a remedy be implied from the enactment of the Boiler Inspection Act alone (Texas & P. Ry. Co. v. Rigsby, supra), without aid from the provisions of the Federal Employers' Liability Act; or whether the provisions of both acts are to be read in pari materia, and the whole given effect as though covering a single subject-matter. Cf. San Antonio & A. P. Ry. Co. v. Wagner, 241 U. S. 476, 484, 36 S. Ct. 626, 60 L. Ed. 1110; Great No. Ry. Co. v. Donaldson, 246 U. S. 121, 124, 38 S. Ct. 230, 62 L. Ed. 616, Ann. Cas. 1918C, 581; Baltimore & O. R. Co. v. Groeger, supra, at page 528 of 266 U. S., 45 S. Ct. 169, 69 L. Ed. 419. These cases recognize the existence of a federal question, and, as we have said, diversity of citizenship is admitted, as is also a cause of action in plaintiff: These statements are here made, and these cases are cited, only to emphasize the fact that the question is neither one on the merits, nor of jurisdiction, but of venue only.

Lack of venue, created by bringing an action in the wrong district, may be waived; and it is waived by failure of defendant to raise the question. Central Tr. Co. v. McGeorge, 151 U. S. 129, 14 S. Ct. 286, 38 L. Ed. 98; In re Moore, 209 U. S. 490, 501 et seq., 28 S. Ct. 706, 52 L. Ed. 904, 14 Ann. Cas. 1164; General Inv. Co. v. Lake Shore Ry., 260 U. S. 261–263, 43 S. Ct. 106, 67 L. Ed. 244; Panama R. Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748; Burnrite Coal Co. v. Riggs, 274

U. S. 208, 211,.47 S. Ct. 578, 71 L. Ed. 1002. Why then was it not waived here? It is said that the plaintiff has not urged the waiver. That is wholly unnecessary. The waiver results from the failure of the defendant to raise the question, be it by pleading and going to trial upon the merits, or otherwise, not from the position taken by the plaintiff. Furthermore, the plaintiff has urged that the court had both venue and jurisdiction, and in this, the plaintiff's position was sound, certainly so, I feel, after trial had been concluded upon the merits.

It is also said that this court should not reverse upon a point not urged in the court below. But proper exception upon the pertinent ground last above stated was taken by the plaintiff to the action of the court in directing a verdict for defendant. This sufficiently saves the question. But even if this were not so, the case would seem to me to be one of obvious error in confusing the questions of venue, of the merits of the action under the Federal Employers' Liability Act, and of jurisdiction of the federal courts. Under such circumstances, and in view of the admitted liability of the defendant, and the serious doubt whether the action could again be tried elsewhere because of the two-year limitation (probably applicable, I think), and the further fact that a full trial upon the merits had once been concluded, albeit the defendant had secured a directed verdict in that trial upon untenable grounds, the case is one in which the court should protect the rights of the litigant without regard to technicality or the shortcomings of counsel. The rights of litigants should be our prime consideration, not the care, qualifications, and skill of counsel in saving a question upon the record. Nor would this be applying a technicality on behalf of plaintiff, while denying the same right to defendant, for, the cause of action and the jurisdiction of the court being admitted, the right to a judgment is a matter of substance, the enforcement of an admitted right, and the objection that such right should be enforced in one place rather than in another, is alone the subject of technicality.

Lastly, it is said that "the best that can be said for plaintiff, on the question of waiver, is that its presence is not plain," and that "the trial court was of the opinion that venue had not been conceded, impliedly or otherwise, by the defendant." Neither could, in my opinion, be further from the legal fact. The cases above cited lay down the doctrine, clearly, and unequivocally, that defect in venue is waived by pleading to, and trial upon,

the merits, or by mere failure of the defendant to raise the question. Here the defendant both joined issue upon the merits of the case under the Boiler Inspection Act and went to and completed the trial without raising objection to venue, unless and until, possibly, in the argument of counsel (not made part of the record) upon the motion for an instructed verdict. Even had the question been raised by such motion, it would have come too late; but it does not appear to have been even thus raised. Nothing prevented the defendant at the very inception of the case from pleading lack of venue in so far as the action was bottomed upon the Boiler Inspection Act, even if such defense to the suit were made conditioned upon failure of plaintiff to sustain his action under the Federal Employers' Liability Act. Not having done so, the right to raise the question at the conclusion of the plaintiff's case was gone, or, if the right then remained, it was just as conclusively then lost by failure to promptly raise the question.

Nor is the opinion of the trial court upon this question of moment. If the portion of that opinion referred to shows anything, it shows that the question of venue never entered the mind of the trial judge, much less the question of waiver, and the distinction between dismissal for want of jurisdiction or upon the merits. The matter was treated exclusively as raising a question of jurisdiction, and the holding was that the "court is without jurisdiction,"—that the plaintiff was for this reason relegated to another forum.

If it be urged that the court unquestionably had venue of the cause of action asserted under the Federal Employers' Liability Act, that venue of the cause of action under the Boiler Inspection Act thereupon attached as incidental, but continued only so long as the first cause of action remained justiciable, and that, when it fell through want of proof of engagement in interstate commerce, it was then open to defendant for the first time to raise the question of venue, it is sufficient answer, as already suggested, first, that the record does not show that the defendant *at any time* questioned the venue of the court, and this alone is enough to constitute waiver; and, secondly, that the two grounds of recovery were both integral parts of the same petition, that failure to prove engagement in interstate commerce *went to the merits* of the one ground of recovery or cause of action, and justified a directed verdict and final judgment for the defendant thereon, but that such verdict could be directed only upon a submitted case,

after trial; and such trial upon the merits, *without at least some formal reservation of the right to question the venue of the court,* is also, in and of itself, a waiver of that right.

To me, the case is one of inadvertent error in the trial court failing to perceive the existence of a question which should have been seen, defeating a clear right of recovery in the present action, and jeopardizing, to say the least, plaintiff's rights in any subsequent action. For this reason I think the judgment should be reversed, and the cause remanded for trial.