## YOUNGSTOWN & O. R. R. CO. v. HALVERSTODT.

(Circuit Court of Appeals, Sixth Circuit. May 7, 1926.)

No. 4532.

1. Commerce ⊗⟼27(6)—Employee on train carrying both interstate and intrastate shipments is employed in "interstate commerce" (Employers' Liability Act, § 1 [Comp. St. § 8657]).

A train carrying both interstate and intrastate shipments is an interstate train, and an employee therein is employed in interstate commerce, within Employers' Liability Act, § 1 (Comp. St. § 8657).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. Commerce ⊗⟼27(5)—Employee injured while engaged in work so closely related to interstate transportation as to be practically part of it was employed in interstate commerce (Employers' Liability Act, § 1 [Comp. St. § 8657]).

The test of employment under Employers' Liability Act, § 1 (Comp. St. § 8657), is whether the employee at time of injury, was engaged in interstate transportation, or in work so closely related to it as to be practically a part of it.

3. Commerce ⊗⟼27(7)—Brakeman of train carrying both interstate and intrastate shipments, injured while switching empty cars at coal mine, held employed in "interstate commerce" (Employers' Liability Act, § 1 [Comp. St. § 8657]).

It was a part of the duty of the crew of an interstate train, of which plaintiff was a member, to switch empty cars onto a coal mine siding. The siding was too short to take all the cars, and some were placed on another sid-

ing until the return trip, when the cars on the coal siding were brought out and replaced by the other empties. During such switching operation plaintiff was injured. *Held*, that such service was part of the handling of the interstate train and that plaintiff, at the time of injury, was employed in interstate commerce, within Employers' Liability Act, § 1 (Comp. St. § 8657).

4. **Master and servant** ⬉286(15), 288(2)— Negligence as to brakeman, injured by gas tank left on adjoining track, and assumption of risk held for jury.

Where plaintiff, a brakeman, was injured during a switching operation by striking against a gas tank left standing on an adjoining track within two feet of the switching track, it was a question for the jury whether defendant was negligent in leaving the gas tank in such dangerous position and also whether plaintiff knew of it and assumed the risk.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

Action at law by Merle D. Halverstodt against the Youngstown & Ohio River Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Ben H. Davis, of Cleveland, Ohio, and L. P. Metzger, of Salem, Ohio (Metzger & McCarthy, of Salem, Ohio, and Treadway & Marlatt, of Cleveland, Ohio, on the brief), for plaintiff in error.

Wm. F. Marsteller, of Cleveland, Ohio (Anderson, Lamb & Marsteller and D. F. Anderson, all of Youngstown, Ohio, on the brief), for defendant in error.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. The Youngstown & Ohio River Railroad Company owns a line of railroad 37 miles in length wholly within the state of Ohio. Trains are electrically operated on the road. On January 24, 1924, Halverstodt, plaintiff below, was a brakeman on a freight train of the company. The termini of his run were East Liverpool and Leetonia. West Point was an intermediate station. A switch led from the main line at that point to a tipple at the mine of the Saeger Fuel Company. On the opposite side of the track there was a switch siding, known as "long siding." A short distance south of this siding was another siding, known as the "team siding." The train was made up at Leetonia. On its southerly trip it carried some empty coal cars to be set off at various mines en route. It also carried an interstate shipment for East Liver-

pool. Some 15 or 18 empty cars were to be placed at the Saeger mine. There was room for only 8 to 10 cars in the siding of that company, and it was necessary temporarily to place the others on the long siding. The crew then proceeded to East Liverpool, where, after their work was done, the train was reconstituted and started on its return trip. It carried shipments consigned to points outside the state. On arriving at West Point, the cars that were in the train were placed in the team siding and the two engines pulling them proceeded to the Saeger switch and removed some loaded cars therefrom to the main track. They then went to the long siding and coupled to the empty cars that had been left there in the morning, to be placed on the Saeger switch. While pulling the empty cars out of the siding the engine was moving 4 or 5 miles an hour. It was Halverstodt's duty to set the brakes on the cars. After setting the brakes on the second car, he discovered that, because of a defective passage, it would be necessary to alight from the car and get on the next one from the ground. In attempting to get down, his foot came in contact with a sieve, which threw him out of balance and caused him to be pulled along for several feet. Before he could recover his balance he was brought in contact with some gas tanks that were stacked between the main track and the long siding, within 2 feet of the moving train. This broke his hold and threw him under the car, resulting in serious and permanent injuries, for which he recovered damages.

The questions argued before us are embraced within the single assignment that the court should have sustained defendant's motion for a directed verdict, made at the conclusion of the plaintiff's evidence and renewed at the conclusion of all the evidence.

[1] It is first insisted that the motion should have gone, because the requisite jurisdictional facts were not offered in evidence; that is, it was not shown that the plaintiff sustained the injuries sued for while both he and the defendant were engaged in interstate commerce. Defendant was engaged in both intrastate and interstate commerce, though the major part of its business was unquestionably intrastate. The train upon which plaintiff was working carried both kinds of shipments on its trip to East Liverpool, and also on the return trip. It was accordingly an interstate train, and the employees thereon were engaged in interstate commerce. Railway Co. v. Hancock, 253 U. S. 284, 40 S. Ct. 512, 64 L. Ed. 907. The question here, however, is complicated by the fact that the interstate shipments were tem-

porarily on the "team track," and at the time plaintiff was injured he was engaged in a local switching movement. It is contended by defendant that that movement must be dissociated from the latest and intended future uses of the cars when loaded, as also from their relationship to the trips to and from East Liverpool, and when so considered the service was purely intrastate. We pass the question of uses as not necessary to decide, examining the contention from the standpoint of the relation of the cars to the interstate train, and necessarily, therefore, the interstate service that plaintiff as one of the crew was performing.

[2, 3] The test of employment is whether the employee at the time of his injury was engaged in interstate transportation or in work so closely related to it as to be practically a part of it. Shanks v. Railroad Co., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797. Every case must be determined on the particular state of facts under consideration. It was a part of the duty of the crew of which plaintiff was a member to switch cars from the interstate train into the Saeger siding. It was not possible to place the cars that were being moved at the time of the injury into that track on the trip south. So they were placed on the long siding, and on the return trip, when plaintiff was again engaged in interstate commerce, it became his duty to do that which he was unable to do on the trip south—place the cars in the Saeger siding. This service was a part of the handling of the interstate train, and in our opinion the performance of it was interstate commerce. Railroad Company v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298.

The Behrens Case, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, is not opposed to this view. The carrier there was engaged in both kinds of commerce. But the injured employee was a member of a crew attached to a switch engine operated exclusively within the city of New Orleans, and was engaged, at the time of his injury, in moving several cars, all loaded with intrastate freight, from one point in the city to another. Railroad Co. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941, and Railroad Co. v. Barlow, 244 U. S. 183, 37 S. Ct. 515, 61 L. Ed. 1070, involved, like the Behrens Case, employees engaged exclusively in switching, who, when injured, were handling only intrastate freight. Those cases are clearly inapplicable to a member of a crew of an interstate train, who, in handling it, cuts out of the train some intrastate cars, and in so doing is injured. As the facts in this case respecting the contents of the train and its movements were not in dispute, it was proper for the court to declare their effect in law, and tell the jury that defendant was engaged in interstate commerce.

[4] The further contention of defendant on its motion for a directed verdict is that the plaintiff assumed the risk of injury resulting from contact with the tanks. This is made on the ground that they were unloaded at that point a few days before and the plaintiff, as defendant claimed, but as he denied, knew or had known of their location. There was no platform at the place where the tanks were stacked, but on the other side of the track there was one that was used for the unloading of freight. The plaintiff said that he did not assist in unloading these tanks, did not know they had been placed between the two tracks, and it is not clear that he was a member of the crew when they were so placed, or that thereafter and prior to the injury he had seen them. Their proximity to the track rendered them dangerous to brakemen, whose duties required them to climb off and upon cars moving on the siding. It was not only a jury question as to whether it was negligence in the railroad to permit them to remain in that situation, and thus probably endanger brakemen who were required to perform their duties of switching on this track, but it was also for the jury to say whether the plaintiff assumed the risk of his injury.

Affirmed.