## MAYOR v. CENTRAL VERMONT RY. CO.

District Court, S. D. New York. December 2, 1927.

1. Commerce ⏤27(1)—Movement constitutes "interstate commerce," if purpose is to facilitate, or movement becomes part of, interstate movement (Federal Employers' Liability Act [45 USCA §§ 51–59]).

Movement, which in and of itself is one purely in intrastate commerce, may neverthe-

26 F.(2d)—57½

less be deemed "interstate commerce," as regards liability of carrier under Federal Employers' Liability Act (45 USCA §§ 51–59; Comp. St. §§ 8657–8665), if purpose of intrastate movement is to facilitate interstate commerce, or the manner of accomplishing the movement is such that it becomes fused with and part of an interstate movement.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. Commerce ⏤27(7)—Injury during switching by which intrastate car was moved by engine, subsequently connected with interstate train, for purpose of putting car on siding, held not in interstate commerce (Federal Employers' Liability Act [45 USCA §§ 51–59]).

Injury to employee during switching operations, by which car in intrastate commerce was moved by engine disconnected from interstate train, for purpose of shifting the intrastate car to a siding of its consignee, held not within Federal Employers' Liability Act (45 USCA §§ 51–59; Comp. St. §§ 8657–8665), because not occurring in interstate commerce, though engine and car were subsequently joined to interstate train and proceeded together for some distance, and switching movement was interrupted by placing entire train on siding, so as to permit the passage of another interstate train.

3. Damages ⏤132(9)—$45,000 to 59 year old brakeman, earning $2,000 a year, for injuries necessitating amputation of leg, held excessive.

$45,000 verdict to 59 year old brakeman, earning approximately $2,000 a year, for injuries necessitating amputation of leg above the knee, and making it impossible for him to wear an artificial limb without further operation, held excessive; recovery in neighborhood of $30,000 being more appropriate.

Judgment affirmed 26 F.(2d) 907.

Alfred T. Rowe, of New York City, for plaintiff.

Wallace R. Foster, of New York City, for defendant.

FRANK J. COLEMAN, District Judge. This is an action under the Federal Employers' Liability Act (45 USCA §§ 51–59; Comp. St. §§ 8657–8665) to recover damages for personal injuries sustained by a brakeman in the employ of the defendant railway. Plaintiff concedes that this court has no jurisdiction of the action, and that it should now be dismissed, unless the injuries were sustained in interstate commerce. The case was

tried before a jury, and a verdict of $45,000 was awarded to the plaintiff. The decision of the defendant's motion to set aside the verdict was reserved, and upon subsequent oral argument it was stipulated that the court should consider the question of jurisdiction.

The undisputed evidence is that the plaintiff was a brakeman employed on an interstate freight train operated by the defendant. On reaching a way station at Monson, Mass., plaintiff was directed by the conductor of the train to assist in a local switching operation. This consisted of removing a certain freight car from a side track and placing it on another siding, where it would be available to its consignee. The car and its contents were concededly in intrastate commerce; the movement was in no way connected with interstate commerce, except for the fact that it was to be accomplished by the interstate train. The car had never been part of that train, and the movement was not for the purpose of getting at other cars, but solely for the purpose of completing the intrastate shipment.

The interstate train was left standing on the main track, and its engine was detached and moved upon the main track for a distance of several rods, until it was at a point near the freight car, which was on a side track adjacent and parallel to the main track. A stake was then placed across the space between the two tracks, with one end resting on the front of the engine and the other end resting on the rear of the freight car. In this way the engine propelled the car along the side track and through a switch, placing it on the main track in front of the engine, to which it was coupled "on its nose." The siding upon which the car was to be placed was about a mile down the track in the direction in which the interstate train was to go.

Instead of completing this switching movement immediately, the engine with the car "on its nose" was moved back to the interstate train, and the entire train, consisting of the car in this position, the engine and the interstate cars, was then placed on another siding, so as to permit the passage of another interstate train. Thereafter the entire train was moved forward down the main track about a mile, where the intrastate car was shoved onto its siding, and the train proceeded to complete its trip.

The accident happened during the staking operation, while the engine was detached from the train and before the intrastate car had been placed completely on the main track and coupled to the nose of the engine. Plaintiff was directed to place the stake across the space between the main track and the siding, with one end on the front of the engine and the other on the rear of the intrastate car. He did this and the engine moved forward, shoving the car some distance, but not sufficient to put it completely through the switch and onto the main track. Both the car and the engine came to a stop, and plaintiff replaced the stake between them. The engine was again set in motion, and plaintiff's evidence is sufficient to sustain a finding that this was so suddenly and improperly done that plaintiff's leg was injured, necessitating its amputation.

[1] At the trial defendant claimed, without the citation of authorities, that the injury occurred in intrastate commerce. The court ruled to the contrary; but, upon consideration of the authorities, which have since been cited, I believe the court was in error, and that the action should have been dismissed for lack of jurisdiction. Unquestionably a movement, which in and of itself is one purely in intrastate commerce, may nevertheless be deemed to be in interstate commerce if (1) its purpose is to facilitate interstate commerce; or (2) the manner of accomplishing it is such that the intrastate movement becomes fused with and part of an interstate movement. A purely intrastate act, such as repairing a bridge, removing an obstruction, or moving intrastate cars, so as to get access to interstate cars, may be deemed to be done in interstate commerce, because its purpose is to facilitate interstate commerce. On the other hand, a movement which is purely intrastate nevertheless may be deemed to be done in interstate commerce, because it is done in conjunction with an interstate movement, as where intrastate cars are made part of an interstate train and are deemed to be in interstate commerce even after they are detached from the train and are being placed on a siding.

In the case at bar, not only the movement in which plaintiff was injured, but also its sole purpose, was purely intrastate. The freight car and its contents were intrastate, and the sole purpose in making the movement was to complete an intrastate shipment. If the movement can be deemed to have been in interstate commerce, it can only be because the manner and means by which it was to be accomplished were such as to unite it with a movement in interstate commerce in such a way as to make it a part of that movement. [2] I would have no doubt about the matter, if it had been planned to move the car from the side track to its ultimate destination with the engine detached from the interstate train.

We would then have had an interruption of interstate commerce, while the crew and engine of the interstate train performed an act of local switching in purely intrastate commerce. It was, however, planned that, after the car was coupled to the nose of the engine, the latter be reunited with the interstate cars, and the entire train as thus formed not only be placed on a siding so as to permit the passage of another interstate train, but that thereafter it proceed on its way for a distance of a mile, where the intrastate car was to be shoved on to the siding of its consignee. The question is, therefore, whether by the modus operandi there was such a uniting of the intrastate and interstate cars, and the entire train as thus formed a part of interstate commerce.

It must be borne in mind that the accident happened before the freight car was completely on the main track, and before it and the engine were joined to the interstate train. It must further be borne in mind that it was not intended to make the intrastate car a part of the interstate train in the usual way and for the usual purpose. On the other hand, it was the intention to accomplish something in interstate commerce while the switching was being completed, by having the interstate cars hauled a mile further on their course while the intrastate car was being shoved to the siding of its consignee. I do not think the interruption of the movement, by placing the entire train on a siding, so as to permit the passage of another interstate train, is a circumstance of much weight, because, if it were, it would place every intrastate train in interstate commerce whenever it was moved on a siding to permit the passage of an interstate train. For the same reason, I do not regard a circumstance much stressed by plaintiff, namely, that when he was injured the freight car was partially through the switch and was blocking the main track.

Under the circumstances, I do not think that up to the time of the accident there had been such a uniting of the local switching with an interstate movement as would make it a part of interstate commerce. This work of staking out the car was not being done for the purpose of building up a train, and plaintiff in doing it was not acting as member of the crew of the interstate train. It is true that later on, after the engine with the car "on its nose" had been recoupled to the train, plaintiff would have united his services as member of the train crew wih his services in switching; but at the time of the accident he was rendering service only in the switching operation. The action, I believe, should therefore have been dismissed.

[3] But in any case the verdict should not be permitted to stand because of its excessiveness. Plaintiff was 59 years of age and earning approximately $2,000 a year. His leg was amputated above the knee, and in its present condition it is impossible for him to wear an artificial limb, because a further operation would be necessary for that. So far as loss of earnings is concerned, while he without question cannot earn as much as he could before, he could easily get some position, such as that of watchman, which would enable him to have some income. Apart from the matter of earnings, deprivation of a leg is a serious thing, and would entitle him to a considerable award; but I believe that $45,000 is excessive, and that, in view of his advanced age, something in the neighborhood of $30,000 would be more appropriate. It is unnecessary, however, to consider this matter in detail, because I have concluded to enter an order dismissing the complaint for lack of jurisdiction.

Settle order on notice.