## SULLIVAN v. WABASH RY. CO.

Circuit Court of Appeals, Sixth Circuit. January 4, 1928.

No. 4881.

Commerce ⬤⟿27(7)—Yard switchman, injured while dropping intrastate car while on way to get interstate cars, held "engaged in interstate commerce" (Federal Employers' Liability Act 1908 [45 USCA §§ 51–59]).

Yard switchman *held* engaged in interstate commerce, within Federal Employers' Liability Act 1908 (45 USCA §§ 51–59; Comp. St. §§ 8657–8665), when injured while dropping intrastate car at certain yard, while taking engine and caboose to another yard to get interstate cars, since dropping of intrastate car was merely incidental to dominant interstate task.

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Action by John Sullivan against the Wabash Railway Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

John Ruffalo, of Youngstown, Ohio (Ruffalo, Wall & Ambrose, of Youngstown, Ohio, on the brief), for plaintiff in error.

Gustavus Ohlinger, of Toledo, Ohio (Smith, Beckwith, Ohlinger & Froehlich, of Toledo, Ohio, on the brief), for defendant in error.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

MACK, Circuit Judge. The single question involved is whether, under the undisputed facts, the trial judge erred in dismissing the case for want of jurisdiction, because plaintiff at time of the injuries was not engaged in interstate commerce, or in work so closely related to it as to practically a part of it, and therefore could not properly sue under the Federal Employers' Liability Act of 1908 (45 USCA §§ 51–59; Comp. St. §§ 8657–8665).

Sullivan at and before that time was in the employ of the Wabash Railway Company as a yard switchman, and worked in that capacity in and about various lines of railway at Detroit, Mich. His duties required him to assist in the switching, transportation, and classification indiscriminately of both interstate and intrastate freight to and from the several yards, namely, Delray yard, Michigan Central stockyard, and the Canadian boatyard; the latter yard was used exclusively for interstate or international freight.

At about 6 o'clock in the morning, Sullivan and others of the switching crew had taken a train of four cars, containing cattle, and a caboose, from the No. 2 track of the Delray yard to the Michigan Central stockyards; three of the cars were interstate cars; the fourth car was purely intrastate. In transporting the four cars to the stockyards, the locomotive engine and the caboose, with both of which Sullivan had been working throughout the entire night, were coupled onto the four cars.

At the yards, after the four cars had been unloaded, the conductor of the crew directed Sullivan to uncouple the locomotive engine, go around the rear of the train and couple the engine to the caboose, go to the boatyard and secure certain international freight which had come from Windsor, Canada. "You get them and take them to Oakwood, and on the way over set out that empty stock car." He ordered the stock car to be placed on No. 5 in the Delray yard on the way over. The Delray yards were necessarily passed on the way to the boatyard, three miles distant from track 5.

Sullivan uncoupled the locomotive engine, with it went around the rear end of the train, and coupled it to the caboose and then to the empty car. On the way to the boatyard the train stopped in the Delray yards to drop off the empty car, and while in the act of uncoupling the caboose from the

empty car, so as properly to set it on the No. 5 track in that yard, Sullivan was injured. Sullivan testified that, if he had been going to Oakwood, he would not have taken the empty car from the stockyards to the Delray yards as part of his ordinary duties, but, if he had been going to Delray, he supposed he would; he would not have left it at the stockyards.

On these facts we are of the opinion that dropping the intrastate car at the Delray yard was merely incidental to the dominant interstate task on which Sullivan was engaged at the moment of the injury; that is, to take his engine and caboose to the boatyard in order there to get the interstate cars. He necessarily passed through the Delray yards en route; true, he was directed to take the empty along and to drop it there; but, on the record, that order appears to have been given only because of and incidental to the primary order in reference to the boatyard. There were not two independent jobs: The first, to go to Delray yards with the empty and there drop the empty; the second, then only to go to the boatyard. While a single order may cover two separate and distinct trips, a going and a return (Grigsby v. Southern Ry. Co., 3 F.[2d] 988 [C. C. A. 6]), in the instant case the entire trip, in our judgment, was a single one to the boatyard, with a purely incidental stoppage at the Delray yards. That the stoppage was made to enable him to drop an intrastate car from a locomotive and caboose moving towards and about to pick up an interstate shipment, and that the injury occurred while uncoupling the empty, does not in our judgment bring this case, any more than the Halverstodt Case, 12 F.[2d] 995 (C. C. A. 6), within the Behrens Case, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163.

Reversed and remanded.