## WISE v. LEHIGH VALLEY R. CO.
### No. 330.

Circuit Court of Appeals, Second Circuit.
July 14, 1930.

Stephen A. Machcinski, of New York City (Edward J. McCrossin, of New York City, of counsel), for appellant.

Alexander & Green, of New York City (H. S. Ogden, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff, a brakeman in a switching crew in the Jersey City freightyard of the

defendant railroad, was injured, through its alleged negligence, while operating a switch on track No. 5. The sole question raised by this appeal is whether he was at the time engaged in interstate commerce so as to come within the provisions of the Federal Employers' Liability Act (45 USCA §§ 51–59).

A number of cars loaded with cement, which had come from Copely, Pa., were on a track known as the cement track that ran along a bulkhead at Jersey City, where they were to be unloaded into barges. After some of them had been unloaded, and for the purpose of bringing the cars that were still loaded close up to the barges, an order was given to the train crew to switch the unloaded cars known as "empties" over to track 5. This was done by pulling the string of cars (loaded and unloaded), after they had been coupled, past the switch which led from the cement track to track 2, shunting the "empties" down track 2, and then replacing the loaded cars on the cement track. After cutting out the "empties" and backing the loaded cars down on the cement track, the engine coupled to the "empties" which had been left temporarily on track 2, started to pull them over a crossover track to track 5, where they were to be left. These "empties" included a car marked with chalk, "Return to Copely, Pennsylvania; empty cement," which contained empty cement bags.

To transfer the "empties" from track 2 to track 5, it was necessary for the engine to take them past a switch and then, after the switch was thrown, to back them down track 5. It was while the plaintiff was performing his duties in operating this switch that he received his injuries.

When the "empties" had been shunted to track 2 and the loaded cars backed down on the cement track, the conductor told the plaintiff to couple the engine to the "empties," put them on track 5, and then to come back and pull out some flour cars that were on Pier G, to shunt any of these flour cars that were "empties" on track 2, apparently so as to leave them to be added to the other "empties" on track 5, and then to take those that were loaded down to Washington avenue, whence they were to be ferried on car floats to New York.

On the foregoing proof a motion was made by the defendant to dismiss the complaint because the plaintiff had failed to show that at the time of the accident he was engaged in interstate commerce. The motion was granted by the trial judge.

The plaintiff contends that he was engaged in interstate commerce because:

(1) The empty cars were moved from track 2 in order to give the flour cars bound for New York a chance to get to the car floats. The object of the maneuver was therefore to facilitate interstate commerce.

(2) While the order to move the flour cars contemplated the prior shifting of the empty cars to track 5, the dominant purpose of the order was to move the interstate cars.

(3) The car containing empty cement bags and marked, "Return to Copely, Pennsylvania; empty cement," was being moved in interstate commerce and plaintiff was engaged in switching it at the time of the accident.

(4) The plaintiff was completing a movement that had been begun to break up an interstate train and to take interstate cars to appropriate places for unloading and delivering freight.

Each part of the maneuver, irrespective of whether it dealt with intrastate or interstate cars, was therefore to facilitate interstate commerce.

 The first contention does not seem to be borne out by the testimony in the case. When the empties had been backed down on track 2 they were evidently east of the switch which led to Pier G where the flour cars destined for New York were to be placed on floats. The plaintiff was asked where the engine was at the time it was coupled to the string of loaded and empty cars that had been pulled out from the cement track, and he said, "It was about a car length or a car length and a half east of the switch" that "goes in between the cement track and Pier G." In such a position the "empties," bound ultimately for track 5, could not interfere with access to or egress from Pier G.

But even if the temporary position of the "empties" on track 2 was to the west of the switch point and so might for the time being interfere with some future movement of the flour cars, that fact would not affect the plaintiff's legal status. The empties only remained on track 2 while the loaded cement cars were being shunted back on the cement track. Certainly the mere presence of an intrastate car on an interstate track does not make it a part of interstate commerce.

In Illinois Central R. R. Co. v. Behrens, 233 U. S. 473, 34 S. Ct. 646, 647, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, the decedent at the time of his death was engaged in moving several cars from one part of the city of

New Orleans to another, all loaded with intrastate freight. Though in general he was indiscriminately employed in handling interstate and intrastate cars over tracks used for cars of both kinds, it was held that he was not engaged in interstate commerce at the time of the accident. This holding was in spite of the fact that upon completing the movement the crew was to have "gathered up and taken to other points several other cars as a step or link in their transportation to various destinations within and without the state."

When the plaintiff here was injured, he was not doing anything with interstate cars, or even attempting to facilitate their movement. He was merely attempting to shift some empty cars, not a part of interstate commerce, to a place where they would be out of the way. The purpose of taking the interstate flour cars to Pier G after the "empties" had been moved to track 5 could not affect the matter. It was quite independent of the prior maneuver and not facilitated by it.

As Justice Holmes remarked in Louisville & Nashville R. R. Co. v. Parker, 242 U. S. at page 14, 37 S. Ct. 4, 5, 61 L. Ed. 119: "The difference is marked between a mere expectation that the act done would be followed by other work of a different character, as in Illinois Central R. R. Co. v. Behrens, 233 U. S. 473, 478, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, and doing the act for the purpose of furthering the later work."

While in this last case, because the movement of an empty car was for the purpose of reaching and moving an interstate car, the plaintiff was held to have been engaged in interstate commerce, yet the language quoted is useful as expounding the true test in a situation like the present. See Mayor v. Central Vermont Ry. Co. (D. C.) 26 F.(2d) 905, 907.

Coming to the second contention, we can see no reason for regarding the direction to move the interstate flour cars as the dominant feature of the order contained in the words of the conductor: "Frank * * * take those cars that are coupled onto the engine over to 5 old bulkhead and leave them there, and come back to Pier G for to pull the pier cars."

One transaction was no more dominant than the other, nor were these movements interdependent or intermixed. They were quite separate, so that each must be regarded as having its individual relation to interstate commerce. Illinois Central R. R. Co. v. Peery, 242 U. S. 292, 37 S. Ct. 122, 61 L.

Ed. 309; Grigsby v. Southern Ry. Co. (C. C. A.) 3 F.(2d) 988.

In Youngstown & O. R. R. Co. v. Halverstodt (C. C. A.) 12 F.(2d) 995, where an interstate train as part of its duty to deliver cars at a mine was unable to do this on its outbound trip but left them temporarily on a siding and completed the operation on its return trip, the completion of the delivery was held a part of interstate commerce. The subsequent act was necessary to complete the work of the railroad in conducting its interstate business and was very different from the case at bar, where the shifting of the "empties" bore no relation save one of sequence to the shifting of the interstate coal cars. Likewise in Sullivan v. Wabash Ry. Co. (C. C. A.) 23 F.(2d) 323, the dropping of an intrastate car from an interstate train was held to be as much a part of interstate commerce as was the movement of intrastate and interstate cars in a single train. Such a decision was inevitable and has no bearing on the present case. To the same effect are New York Central & H. R. R. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298, and Pennsylvania Co. v. Donat, 239 U. S. 50, 36 S. Ct. 4, 60 L. Ed. 139.

█ It is next said that the marking of one of the cars which contained some empty cement bags, "Return to Copely Pennsylvania," made the string of empties a subject of interstate commerce. But there is no evidence that the car was accepted for interstate commerce because of the marking, or that thereby interstate commerce had in any sense begun. Such an inscription by an unknown person, in our opinion, falls short of an assignment to interstate commerce sufficient to bring the case within the Employers' Liability Act (45 USCA §§ 51–59). Shauberger v. Erie R. Co. (C. C. A.) 25 F.(2d) 297; Baldassarre v. Pennsylvania R. R. Co. (C. C. A.) 24 F.(2d) 201; Minneapolis & St. Louis R. R. Co. v. Winters, 242 U. S. 353, 37 S. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54; Rogers v. Canadian Nat. Ry. Co., 246 Mich. 399, 224 N. W. 429.

It was not shown when the marks were put on the car or that they were not affixed before the shipment of cement from Copely, or even in connection with some other shipment. There was no proof of any attempt to make up a train to go to another state or anywhere.

█ The last point made on behalf of appellant is that at the time of the accident he was engaged in breaking up an interstate train. This contention has not the slightest

foundation. Not only were the cars on the cement track, at least to some extent, separated, so that several engine movements were necessary to couple them together for removal to track 2, but, when placed on the cement track, they had evidently been completely delivered and ceased to be subjects of interstate commerce. Lehigh Valley R. R. Co. v. Barlow, 244 U. S. 183, 37 S. Ct. 515, 61 L. Ed. 1070.

Judgment affirmed.