## POPE v. UTAH–IDAHO CENT. R. CO. et al.

No. 340.

Circuit Court of Appeals, Tenth Circuit.

Dec. 15, 1931.

Willard Hanson, of Salt Lake City, Utah (A. H. Hougaard, of Salt Lake City, Utah, on the brief), for appellant.

James A. Howell, of Ogden, Utah (James H. DeVine, David L. Stine, and Alfred W. Agee, all of Ogden, Utah, on the brief), for appellees.

Before LEWIS and McDERMOTT, Circuit Judges, and SYMES, District Judge.

LEWIS, Circuit Judge.

Appellant brought this action in the court below, relying on the Federal Employers' Liability Act (title 45, U. S. Code, §§ 51–59 [45 USCA §§ 51–59]), to recover for personal injuries due to the alleged negligence of the defendants while he was in the employ of one of them as brakeman in a switching crew and then engaged, as alleged, "in moving and transporting cars in interstate commerce. * * *" At the close of the trial the court instructed a verdict in favor of the defendants on the ground that the evidence would not support a finding that plaintiff was engaged in interstate commerce when he was injured. We therefore assume, without stating all the facts, that a case was made for the jury on the issue of negligence. Relative to the issue on which the case was disposed of, the facts are these: The defendant Utah-Idaho Central Railroad Company owns and operates an electric railway which extends from Ogden, Utah, to points in the State of Idaho over which it transports interstate commerce; on September 26th, 1928, plaintiff was brakeman in a switching crew; about 5:40 in the afternoon of that day the conductor in charge received orders of car movements to be made, which the crew under his direction proceeded to execute until about midnight when they stopped for supper; there is no claim that up to that time they had handled any car that was at all connected with interstate shipments; when they stopped for supper there were still two cars that had not been moved, one an empty refrigerator car to be placed on siding No. 2, and the other a car of coal to be placed on siding No. 3; these two cars were in the yard at Ogden; but before returning to their labors after supper the conductor received an additional order from the train dispatcher to pick up seven cars on siding No. 1; they were loaded for shipment outside the state and were to be placed in position for destination; these latter are the cars on which the claim that plaintiff was engaged in interstate commerce at the time of the injury is based. Siding No. 1 on which these interstate cars were standing was about two miles north of the city limits of Ogden. A little less than a mile north of that siding is siding No. 2 on which the empty refrigerator car was to be placed, and a little less than one-half mile north of that siding is siding No. 3 which is a spur track in North Ogden, on which the loaded coal car was to be set. After supper the crew picked up the loaded coal car and the empty refrigerator car in Ogden and proceeded northerly past siding No. 1 to siding No. 2, and placed the refrigerator car on that siding. It was while the switching operations were being made for that purpose that plaintiff received the injuries here complained of. He was so disabled that he did not and could not participate further as a member of the crew, but was placed in the motor car. However, the other members of the crew proceeded with the loaded coal car and placed it on siding No. 3, the spur track at North Ogden. The motor car was then returned to siding No. 1, and coupled to the interstate cars, but the trolleyman informed the conductor that appellant, then in the motor car, was pretty sick, so the motor was cut loose from those cars, and appellant was immediately taken to Ogden on account of his condition.

Counsel for appellant freely admit that the refrigerator car placed on siding No. 2 and the coal car placed on siding No. 3 were not interstate cars; but they contend, if we understand them, that the railroad company and appellant in placing the refrigerator car on siding No. 2 were then engaged in interstate commerce, because it was the purpose of the crew in making the trip to North Ogden and return to pick up and transfer the cars on siding No. 1 in order to start them on their interstate movement. This, it seems to us, ignores the plain requirements of the first section of the act under which the suit was instituted. It is not a question of intention as to future movements, in which, as it turned out, plaintiff took no part. The plain language of the section makes the carrier liable to the employee only upon his "suffering injury while he is employed by such carrier in such [interstate] commerce." On the facts stated neither the railroad company nor plaintiff were engaged in such commerce when the injury was suffered.

In Illinois Cent. R. R. v. Behrens, 233 U. S. 473, 478, 34 S. Ct. 646, 648, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, it is said:

"Here, at the time of the fatal injury the intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city to another. That was not a service in interstate commerce, and so the injury and resulting death were not within the statute. That he was expected, upon the completion of that task, to engage in another which would have been a part of interstate commerce, is immaterial under the statute, for by its terms the true test is the nature of the work being done at the time of the injury."

Again in Erie Railroad Co. v. Welsh, 242 U. S. 303, 306, 37 S. Ct. 116, 118, 61 L. Ed. 319, the same principle is stated thus:

"By the terms of the Employers' Liability Act the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act."

See, also, C. B. & Q. R. R. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941; and Wise v. Lehigh Valley R. Co. (C. C. A. 2) 43 F.(2d) 692, and cases therein cited.

The court below did not err in the respect challenged.

Affirmed.